Malcolm **KAHN** et al., on behalf of themselves and all other shareholders of 360 East 72nd Street Owners Incorporated similarly situated, Plaintiffs,

. v.

Doris **KASKEL** et al., Defendants.

Dorothy **CRASTO** et al., on behalf of themselves and all other shareholders of 360 East 72nd Street Owners Incorporated, Plaintiffs,

v.

Estate of Alfred L. **KASKEL** et al., Defendants.

Michael **WALLACK** et al., Plaintiffs,

v.

Richard **DAVIS** et al., Defendants.

Nos. 73 Civ. 4039–LFM, 73 Civ. 3486–LFM, 73 Civ. 4976–LFM.

United States District Court,
S. D. New York.

Dec. 4, 1973.

Marvin J. Goldstein, New York City, for plaintiffs in 73 Civ. 4039.

Bennett Frankel, P. C., New York City, for plaintiffs in 73 Civ. 4976.

Olitt, Friedberg & Kagel, New York City, for plaintiffs in 73 Civ. 3486.

Kuh, Goldman, Cooperman & Levitt, New York City, for defendant 360 East 72nd Street Owners Inc.

Finley, Kumble, Underberg, Roth & Grutman, New York City, for defendants Doris Kaskel and others, as Executors of Estate of Alfred L. Kaskel.

Leon Brickman, Brooklyn, N. Y., for defendant Douglas Gibbons-Hollyday & Ives, Inc.

MacMAHON, District Judge.

These are separate applications for preliminary injunctions in a stockholders' derivative suit and two purported class actions now pending in this court against the defendants. We deny the applications.

The factual background which spawned these actions is detailed fully in Richards v. Kaskel, 32 N.Y.2d 524, 347 N.Y.S.2d 1, 300 N.E.2d 388 (1973). It appears from that opinion and papers submitted here that in 1970 the Estate of Alfred L. Kaskel, then owner of an apartment building at 360 East 72nd Street, New York City, sponsored a plan for conversion of the building to co-operative ownership. Such a conversion would permit the co-operative to evict all non-subscribing tenants who would otherwise have been entitled to renewals of their leases under the Rent Stabilization Law of 1969. The conversion could not be accomplished, however, unless 35% of the tenants subscribed to the plan.[1] Neither the original plan, nor subsequent amendments designed to make it more attractive, garnered the required number of subscribers, despite more than a year's sales promotion by the sponsor.

Confronted with failure and in order to induce the requisite number of tenants to subscribe, the sponsor employed the false and fraudulent representation that the required 35% had already been obtained. The results were spectacular and within a week the plan had gone "over the top." Discovering the fraud, Richards et al. brought a class action in the New York courts on behalf of 124 non-subscribing tenants for a declaratory judgment that they still had the right to renewal of their leases because the conversion to a co-operative was vitiated by fraud. The Court of Appeals agreed that the sponsor had perpetrated a fraud upon the non-purchasing tenants.

Following that court's decision, the directors of the co-operative sought the advice of counsel. Two separate and independent law firms were retained to study the case and give written opinions regarding the rights and liabilities of all parties concerned. While the directors waited for legal guidance, the first of the purported class actions (73 Civ. 3486) was commenced on August 9, 1973.

A few weeks later, the directors received opinion letters advising them of the co-operative's rights and liabilities. Counsel advised that the co-operative was exposed to possible liability at common law, as well as under federal securities laws, for damages to purchasers of its stock and that the purchasers could possibly rescind and recover the consideration paid to the co-operative. The di-

---

1. Administrative Code of City of New York, § YY51–6.0, subd. c, par. [9], and the Real Estate Industry Stabilization Code promulgated under it (Code of Real Estate Industry Stabilization Association of New York City, § 61, subd. 4, par. [a]).

rectors were further advised that the co-operative possessed possible claims against the sponsor for (1) damages for violations of the securities laws; (2) profits earned by the sponsor through a breach of fiduciary duties owed the co-operative and the subscribers; (3) rescission and damages for common law fraud; (4) damages in the amount of $100,000 owed for real estate taxes; (5) damages for another $100,000 owed for repair work on the building; (6) damages in the amount of $250,000 owed for increases in the building's annual operating expenses; and (7) rescission of the entire sale of the property from the sponsor to the co-operative. Furthermore, the co-operative had potential claims over against the sponsor for indemnity for any liability it had incurred to third parties including all tenants. Counsel noted, however, that certain of the claims under the securities laws may have been barred by the statute of limitations. Finally, the opinion letters noted that the co-operative might have claims against Mr. Schragis (the sponsor's nominee on the board of directors) for any liability the co-operative incurred to purchasers from him and that, in any event, the shareholders might have actions against Schragis for securities law violations.

The directors received the second opinion letter on September 18, 1973, and two days later the second purported class action (73 Civ. 4039) was commenced. Both purported class actions are brought on behalf of all the shareholders of the co-operative and claim violations of the securities laws, alleging that defendants made false and fraudulent representations of material facts to members of the class in selling or offering to sell them shares of the co-operative. Among the misrepresentations allegedly made by defendants were that: (1) the co-operative plan would be offered only to New York residents; (2) the necessary 35% subscribers had been legally obtained; (3) an income tax de-

duction would be available to shareholders of the co-operative and (4) the plan would permit the co-operative to avoid the Rent Stabilization Law. The complaints differ only in the relief sought. Plaintiffs seek damages in 73 Civ. 3486 and rescission in 73 Civ. 4039. Neither of the plaintiffs has sought class action determination, as required by Rule 23(c)(1), Fed.R.Civ.P., and this district's Civil Rule 11A(c).

Despite advice of its rights and liabilities and notwithstanding the commencement of the class actions, the directors did not commence an action against the sponsor or any of the other defendants, although urged to do so by plaintiffs. Instead, the directors negotiated with the sponsor for a settlement and threatened suit if a settlement were not obtained.

The negotiations culminated in a written proposal, dated October 12, 1973, under which, in exchange for a general release from the co-operative, the sponsor offered to pay the co-operative $180,000; cancel a promissory note of the co-operative in the amount of $100,000; pay a credit of $25,000 toward refurbishment of the building lobby; waive a claim of $39,000 against the co-operative and indemnify the co-operative against claims arising out of the "decision of the Court of Appeals in the action entitled Ethel Richards et al. against Doris Kaskel et al. or any affirmative action taken by [the sponsor] in connection with its sponsorship of the Offering Plan. . . ."

Significantly, by its express terms, the proposal does not "impair or adversely affect any individual right a shareholder of [the co-operative] may have against [the sponsor] or any other party, firm or entity." [2] Nevertheless, the proposal goes on to offer to pay each shareholder of record uncertain sums calculated under a confusing formula in return for a general release.

---

**2.** A draft of the settlement agreement, dated November 27, 1973, submitted on oral argument, provides for even broader indemnity.

A shareholders' meeting for the purpose of voting on the proposal was held on October 17, 1973, but, on motion of the derivative plaintiff, was adjourned to an indefinite future date. The meeting has since been scheduled for December 5, 1973, a fact which precipitated the filing of the derivative suit on November 20, 1973 and these applications which primarily seek to enjoin both the meeting and the settlement.

The complaint is far from a model pleading. As best we can glean, however, it alleges that the defendants, by use of the mails and interstate telephone lines, use of a false and fraudulent prospectus, and by other fraudulent and negligent acts, caused the cooperative to sell its shares in violation of the securities laws, thus exposing it to substantial liability. These actions among others, plaintiff claims, breached the defendants' fiduciary duty to the co-operative.

The facts stated, we turn now to the applications at hand.

■■ It is fundamental that a preliminary injunction is an extraordinary remedy granted only upon a clear showing of probable success upon a plenary trial, irreparable injury to the applicant if the injunction is denied, and the absence of an adequate remedy at law.[3] An application for a preliminary injunction is always addressed to the discretion of the court.[4]

With these principles in mind, we now examine whether the applicants have met their burden of proof.

## PROBABILITY OF SUCCESS

■ As we have seen, all the plaintiffs, whether suing derivatively or as a class, allege that along with other wrongful conduct the sponsor made false and fraudulent representations that the requisite 35% of the tenants had subscribed to the plan. Ultimately, proof of that fact appears certain in view of *Richards* and, without more, is a sufficient showing of probable but not certain success by at least some of the plaintiffs upon trial of these actions.

## IRREPARABLE INJURY

■ Plaintiffs in the purported class actions contend that they will be irreparably injured by a settlement because the co-operative's principal asset lies in its right to make a claim over against the sponsor if plaintiffs are successful on the merits in their claims against the co-operative and that the right to claim over will be extinguished by the co-operative's general release of the sponsor, as contemplated by the proposal. The short answer to this contention is that the broad indemnity rights to be contained in the proposed settlement are not only the equivalent of the putative claim over but also more definite and certain than contingent claims for indemnity based upon the uncertain outcome of litigation.

The detailed and concrete expression of the indemnity provision contained in the November 27th draft of the proposed settlement appears to be about as broad as an indemnity agreement can be. Thus, it would seem that if the settlement is made, the class action plaintiffs will not be harmed but benefitted by the substitution of a definite indemnity agreement for the co-operative's contingent claim over.

■ Nor do we see how the class plaintiffs will be injured by settlement of the co-operative's claims against any of the defendants. This follows from the theory that a class action by shareholders against their corporation and third parties, unlike a derivative suit, is not based upon rights derived from the

3. Packard Instrument Co. v. Ans, Inc., 416 F.2d 943 (2d Cir. 1969); Imperial Chem. Indus. Ltd. v. National Distillers & Chem. Corp., 354 F.2d 459 (2d Cir. 1965); Societe Comptoir de L'Industrie etc. v. Alexander's Dept. Store, 299 F.2d 33, 35 (2d Cir. 1962);

Torres v. New York State Dept. of Labor, 318 F.Supp. 1313 (S.D.N.Y.1970).

4. Ideal Toy Corp. v. Sayco Doll Corp., 302 F.2d 623, 624 (2d Cir. 1962); Heyman v. AR. Winarick, Inc., 166 F.Supp. 880, 883 (S.D.N.Y.1958).

corporation but upon individual rights of action belonging to each member of the class. Release or settlement of the co-operative's rights against these defendants, therefore, will have no affect whatever upon the individual shareholders' rights against any of the defendants, nor would it compromise or terminate the class action. This is made doubly sure by the express term of the proposed agreement that it will not "impair or adversely affect any individual right a shareholder of [the co-operative] may have against [the sponsor]."

We conclude, therefore, that the class action plaintiffs fail to meet their burden of showing irreparable injury.

In the derivative suit, plaintiffs contend that once the derivative action is pending, the corporate defendant cannot settle its claims against the alleged wrongdoers without court approval and that if such out-of-court settlement is not enjoined they will be irreparably injured "because the plaintiffs would be unable to proceed with this stockholders derivative action until and unless they set aside the said settlement and vacated the general release delivered thereunder."

It cannot be gainsaid that Rule 23.1, Fed.R.Civ.P., explicitly provides:

"The action shall not be dismissed or compromised without the approval of the court and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs."

To contend, however, that the co-operative may not settle with the alleged wrongdoers without court approval misconstrues the rule.

■■ There is nothing in Rule 23.1 which in any way prohibits a corporation from making an out-of-court settlement and giving a general release merely because a derivative action, brought on its behalf, is pending in a federal court. Rather, as Judge Friendly observed in Wolf v. Barkes, 348 F.2d 994, 997 (2d Cir.), cert. denied, 382 U.S. 941, 86 S.Ct. 395, 15 L.Ed.2d 351 (1965), the "corporation's interest in achieving a favorable settlement does not cease because derivative litigation has begun. . . ." Nonetheless, the corporation settling out of court acts at its peril for such a settlement not only fails to compromise or dismiss the derivative action but also leaves the derivative plaintiff free "to challenge the settlement, either by pursuing the original action and attempting to overthrow the settlement or by bringing a new action against the directors in which the settlement itself is the gravamen of the complaint." [5] In short, if the corporation chooses to act at its peril, it is free to do so.

That *Wolf* controls decision here is reinforced by the fact that, notwithstanding Judge Friendly's suggestion in *Wolf* and urging by the S.E.C., the applicable rule now, 23.1, was not amended to cover a case like that here presented, although comprehensive amendments to the Federal Rules of Civil Procedure have been made since the decision in *Wolf*.[6]

■ In light of *Wolf* and although the settlement, if consummated, may burden the derivative plaintiff with the need to challenge the validity of the settlement, we conclude that such a burden does not amount to irreparable injury. Moreover, the right to challenge the settlement and the release and to seek damages against defendants, if the release is invalidated, provides plaintiff with an adequate remedy at law.

### BAD FAITH

Plaintiffs' final contention is that the directors are dominated by the sponsor and are settling too cheap in bad faith.

■■ We are not unmindful that where wrongdoing is afoot, *Wolf* leaves us free to employ our equity powers to enjoin an out-of-court settlement until

---

5. Wolf v. Barkes, 348 F.2d 994, 997 (2d Cir.), cert. denied, 382 U.S. 941, 86 S.Ct. 395, 15 L.Ed.2d 351 (1965).

6. Wolf v. Barkes, *supra,* 348 F.2d at 997 n. 4.

final resolution of the derivative action on its merits.[7] Nonetheless, we decline to do so here because plaintiff has failed to show any facts to support the bald conclusion that the directors are in collusion with the sponsor and about to make a "sweetheart settlement."

Thus, although it appears that four of the nine directors of the co-operative are nominees of the sponsor, there is no showing beyond sheer conclusory allegations that the remaining five are in any way influenced or dominated by the sponsor. Indeed, since all five are resident tenants possessed of the same rights and claims as the derivative plaintiff, the inference points not only to their objectivity but also to self-interest identical to the plaintiff.

All the resident directors were elected by the shareholders eleven months or more after the wrongs perpetrated by the sponsor had been completed. None received any votes from the sponsor's nominee or participated, at any time, in any of the wrongdoing alleged in the complaint. Moreover, the pains the directors have taken to secure independent legal advice, negotiate with the alleged wrongdoers and submit the proposal to the shareholders in an open meeting indicate a regard for their fiduciary duties and a bona fide concern for the welfare of the co-operative and its shareholders. Furthermore, the board has expressed its intention over and again to commence an action against the alleged wrongdoers if the settlement is not consummated.

This is not a case where the hand of the directors has been forced by the start of a derivative suit. Rather, the derivative action was not commenced until settlement appeared imminent and long after the directors had sought the guidance of counsel, entered into negotiations with the sponsor and advised shareholders of their plans either to obtain a settlement or to sue. Surely, there is nothing in such conduct indica-tive of bad faith. Indeed, we find nothing here to show that the directors are acting otherwise than in the best interest of the co-operative and its shareholders. Moreover, the derivative plaintiff, in correspondence with the shareholders, has told them fully of the co-operative's and the shareholders' rights and liabilities, vis-a-vis, the other defendants, as well as his objections to the proposed settlement. He has also solicited their support in opposing the settlement, and for all that appears he may yet persuade a majority to vote against the proposal at the coming meeting.

In attempting to reach a favorable settlement with the sponsor, thus sparing the co-operative and its residents the expense, disruption and anxiety of litigation, the directors are merely exercising their best judgment in corporate affairs, as is their duty. Absent a more compelling showing of wrongdoing than the mere allegations plaintiff makes here, we will not interfere with that judgment.

Plaintiff also contends that the proposed settlement is inadequate. The short answer to this is that he has simply failed to provide us with sufficient facts to determine that question one way or the other.

We conclude, therefore, that plaintiff has failed to show any bad faith on the part of the directors.

Since all of the plaintiffs have failed to sustain their burden of proof sufficient to prevail upon these applications for a preliminary injunction, we deny their motions.

In denying injunctive relief, we wish to make clear that we are in no way authorizing or approving the proposed settlement or release of the co-operative's claims or determining the fairness, adequacy or validity of the agreement or foreclosing plaintiffs in these actions from prosecuting their claims or challenging the validity of any settlement or release.

7. Wolf v. Barkes, *supra*, 348 F.2d at 998.

Accordingly, the separate applications of plaintiffs for preliminary injunctions are denied.

The foregoing opinion constitutes this court's findings of fact and conclusions of law, in accordance with Rule 52(a), Fed.R.Civ.P.

So ordered.