**Hilde HERBST and Aaron M. Fine**

v.

**INTERNATIONAL TELEPHONE AND TELEGRAPH CORPORATION et al.**

**Civ. No. 15155.**

United States District Court, D. Connecticut.

Aug. 11, 1976.

Sidney B. Silverman, Joan Harnes, New York City, James O'Connor Shea, New Haven, Conn., Robert Hellawell, New York City, for plaintiffs.

John H. Schafer, III, Charles E. Lister, David J. Cynamon, Covington & Burling, Washington, D. C., Louis B. Blumenfeld, Cooney & Scully, Hartford, Conn., for defendant ITT.

Simon H. Rifkind, Paul J. Newlon, Robert S. Smith, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Lazard Freres and Felix G. Rohatyn.

Samuel E. Gates, Robert L. King, DeBevoise, Plimpton, Lyons & Gates, New York City, for defendant Black, et al.

S. Hazard Gillespie, Davis, Polk & Wardell, New York City, for inside directors.

Abraham L. Pomerantz, Daniel W. Krasner, Pomerantz, Levy, Haudek & Block, Mordecai Rosenfeld, New York City, for objector Morris Shapiro.

Bennett Frankel, New York City, for objector Auerbach.

Mathias Lloyd Spiegel, Netter & Spiegel, New York City, for objectors Bleckers.

Louis M. Rundio, Jr., McDermott, Will & Emery, Chicago, Ill., for class member Philo Higley.

George Lessner, Lessner, Rottner, Karp & Plepler, Manchester, Conn., for certain Hartford Group Stockholders.

Milton S. Gould, Shea, Gould, Climenko, Kramer & Casey, New York City, for Robert L. Boehm.

Paul B. Galvani, Ropes & Gray, Boston, Mass., for Ropes & Coe, et al.

BLUMENFELD, District Judge.

## RULING ON PROPOSED STIPULATION OF SETTLEMENT

This case is a class action, brought under the federal securities laws on behalf of those shareholders of the Hartford Fire Insurance Company (Hartford Fire) who exchanged their common stock for Cumulative Preferred Stock, $2.25 Convertible Series N of the International Telephone and Telegraph Corporation (ITT) during the spring of 1970. The defendants are ITT, its directors at the time of the exchange offer, and Lazard Freres & Co., the dealer-manager for the exchange.

### I. *History*

The exchange offer was the culmination of ITT's efforts to acquire control of the Hartford Fire Insurance Company. During 1969 ITT attempted to arrange a merger with Hartford Fire. As part of that effort ITT sought and obtained a ruling from the Internal Revenue Service (IRS) concerning the proposed merger's federal income tax consequences for the shareholders of the Hartford Fire Insurance Company. That revenue ruling stated that the merger would be a tax-free reorganization, with no recognition of gain or loss by the Hartford Fire shareholders, provided that ITT unconditionally disposed of the Hartford Fire stock it had acquired for cash prior to the merger. A supplemental ruling by the IRS stated that the proposed contract for the sale of that stock between ITT and an Italian bank, Mediobanca Bancadicredito Finanziaro—Societa Per Azioni, satisfied the requirement of an unconditional disposi-

tion of the stock by ITT. Late in 1969 the merger plans fell through, when the Insurance Commissioner of the State of Connecticut rejected the proposal. Rather than abandon its attempt to obtain control of Hartford Fire, ITT proposed a voluntary exchange offer to Hartford Fire shareholders. This offer was approved by the Insurance Commissioner, and became effective when over 99% of the Hartford Fire common stock was exchanged.

The plaintiffs' claim in this case arises from the exchange offer. Specifically, they allege that ITT misled the IRS regarding the sales agreement with Mediobanca. Plaintiffs allege that, instead of transferring its Hartford Fire shares outright, ITT maintained control over their disposition and use through a separate arrangement with Lazard Freres, which had introduced Mediobanca as a possible purchaser of the shares, and that Mediobanca assumed none of the risks of ownership. Plaintiffs claim that this arrangement, not disclosed to the IRS or the Insurance Commissioner, vitiated the revenue rulings and the Insurance Commissioner's approval of the acquisition.[1] Plaintiffs also contend that the prospectus which ITT sent to Hartford Fire shareholders in connection with the exchange offer misrepresented that ITT had unconditionally disposed of its Hartford Fire shares. Plaintiffs' claim is that this misrepresentation and nondisclosure renders ITT liable for damages to compensate them for the risk that the exchange might be a taxable event, and for any taxes assessed against them.

## II. *Proposed Settlement*

The issue now before me is the fairness of a proposed stipulation of settlement, executed by counsel representing all parties. After notice by publication and first class mail to all former Hartford Fire shareholders and all current ITT shareholders,[2] a fairness hearing was held on June 4, 1976, as required by Rule 23(e), Federal Rules of Civil Procedure.

The settlement proposal provides that members of the plaintiff class will have two options regarding their recovery. They may elect to take a flat payment of $1.25 per share (payable in ITT common stock), or they may choose to obtain a judgment against ITT, requiring it to reimburse any tax liability incurred as a result of the Hartford Fire/ITT Series N Preferred stock for stock exchange.[3] The entire cost of this settlement—estimated at between $23 and $35 million, depending upon the elections made and the outcome of the tax litigation—will be borne by ITT. The defendants, in return, will be released from any further claims by members of the plaintiff class, as set forth in the stipulation of settlement and the Proof Of Claim And Release attached to the stipulation. In addition, the stipulation provides that ITT will issue broad, general releases to all of its present directors and all director-defendants,

"discharging them, and each of them, from any and all claims, demands, and causes of action which have been or which might have been asserted on behalf of ITT against such persons in connection with or arising out of any of the matters, transactions and occurrences recited, described or referred to in the pleadings and proceedings herein."[4]

As the stipulation further recites, counsel for the directors intend to use these releases

---

1. In fact, the IRS revoked its rulings in this case on March 6, 1974, and has sought to assess taxes against the plaintiff class.

2. Pursuant to Federal Rules of Civil Procedure 23(e) and, purportedly, 23.1. Sidney Silverman's Affidavit of Compliance With Orders, June 2, 1976.

3. Reimbursement would be necessary, of course, only if the Internal Revenue Service's claim that exchanging shareholders must rec-ognize gain or loss on this transaction is eventually upheld.

4. Paragraph 17 of the Stipulation of Settlement. Paragraph 20(c) provides that, in addition to the named defendants,

"all of their present and former directors, officers, employees, partners, agents and attorneys [will be discharged] from all claims, demands and causes of action which plaintiffs and each member of the class . . . have or may have . . .."

in seeking dismissal of the various shareholder derivative actions based on these "matters" which are now pending in this and other courts.[5] The stipulation also provides that the counsel fees and expenses of plaintiffs' attorneys will be paid by ITT, also in ITT common stock, subject to ITT's reserved right to be heard with respect to the fee application prior to this court's ruling on the application.[6]

Although both parties have made concessions to achieve a peaceful settlement, the stipulation explicitly provides that the proposed compromise may not be construed as either "an admission of lack of merit in this action" on the part of plaintiffs or "an admission of any liability or wrongdoing whatsoever, or that any of the allegations of the complaint are true" on the part of defendants. The plaintiffs decided to accept the compromise in the face of the risks of litigation, and their conclusion, after discovery, "that no evidence has been adduced in this case which would sustain a claim against the Director-Defendants and . . . that all actions taken by the Director-Defendants were taken for the benefit of ITT . . . ." ITT's rationale for settling this case with the plaintiffs, and issuing the releases to the directors as well, is that it may thereby be free to litigate the taxability of the exchange in a different forum where the Internal Revenue Service is a party, without incurring the collateral estoppel risks implicit in any earlier ruling, here or in one of the derivative lawsuits. ITT is actively conducting that litigation now, on behalf of the exchanging Hartford Fire shareholders, pursuant to its promise to reimburse them for any tax liability assessed on the exchange. There is no advantage to the corporation or its directors in ending this case but simply shifting the trial on the taxability of the exchange to one of the derivative lawsuits. This is the stated reason for the release of the directors in this proposed settlement, and why the Special Committee appointed by ITT's Board of Directors concluded that the settlement and releases should be approved.[7]

### III. *Objections*

At the hearing two different types of objections were made to the proposed stipulation of settlement. The first, raised by members of the plaintiff class, involved the nuances of the tax reimbursement method of recovery. Those problems were, in large measure, resolved at the hearing.[8] The oth-

---

5. The cases listed in paragraph 17 are:
   *Boehm v. R. E. Bennett, et al.*, 74 Civ. 1132 (WCC) (S.D.N.Y.); * *Shapiro v. E. R. Black, et al.* (Sup.Ct., N.Y.Co.); *Auerbach v. Pomeroy Day, et al.*, CA 4481 (Del.Ch.); *Blecker v. Lazard Freres & Co., et al.*, 73 Civ. 4057 (WCC) (S.D.N.Y.).
   * *Boehm* has been transferred to this court, and is now pending before me as Civil No. H76–215.

6. Plaintiffs' counsel have submitted their fee application, and ITT has exercised that right. Resolution of this claim will await further developments in the case.

7. Of course, implicit in this analysis is a conclusion that both this case and the shareholder derivative actions turn on the actual taxability of the exchange. Whether or not that is so need not, however, be resolved at this time. That question was argued before me November 3, 1975, on defendants' motions for summary judgment and partial summary judgment. At the request of counsel, a decision was put off when the court was informed of the brightening settlement prospects.

8. It is now agreed that the tax reimbursement option includes the reimbursement of all state and local taxes which are "piggybacked" on one's federal income taxes. It also provides for reimbursement of any interest which may be due, and extends to the reimbursement of "tax due upon taxes," should the reimbursement payments themselves prove to be taxable income to the recipients. Furthermore, the parties agreed that the July 6, 1976 deadline for making an election between the two methods of recovery, by filing the Proof Of Claim And Release, would be extended at least until 60 days following this court's ruling on the proposed stipulation of settlement. Finally, the parties also agreed that no claim need be filed at this time by those class members choosing to avail themselves of the tax reimbursement recovery option. This concession was made by ITT to preserve the intent of its letters of March 11 and April 4, 1974, promising to reimburse the Hartford Fire shareholders for any tax liability they eventually incur as a result of the exchange.

er objections were raised by ITT shareholders who are not members of the plaintiff class, but who are plaintiffs in derivative suits against the ITT directors, and others. They strenuously opposed the provisions of the stipulation by which ITT would issue releases to the various director defendants, on grounds that these releases would—or could—effectively terminate their lawsuits. I shall return to this issue after an evaluation of the fairness, adequacy and reasonableness of the proposed stipulation of settlement.

■ The considerations which must control my responsibility under Rule 23 were well stated by Judge Moore in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). The factors relevant to this case include the complexity of the litigation, the reaction of class members, the stage of the proceedings, the risks of establishing liability and damages, and, in light of those risks and the scope of the possible recovery, the reasonableness and adequacy of the settlement fund. 495 F.2d at 463.

The nub of plaintiffs' claim is that ITT and the other defendants violated the federal securities laws by their omissions and misstatements concerning the true nature of the ITT sales agreement with Mediobanca, and with respect to agreements between Mediobanca and Lazard Freres & Co.

As a result, plaintiffs claim that they were subjected to the risk that the IRS might discover the truth, revoke its rulings, require them to recognize the gain or loss they realized upon the exchange, and assess federal income taxes on those amounts. Plaintiffs have advanced two admittedly inconsistent theories of damages. First they seek to recover the increase in value ITT would have been forced to offer Hartford Fire shareholders in order to induce them to exchange their stock, in light of the risk that taxes might be imposed on their

capital gains realized on the exchange; second, they seek to recover the actual tax liability eventually incurred by the class members.[9]

Stating the issues presented for litigation in this fashion sufficiently illustrates the nature of the case and the risks as to liability and damages. The liability issues involve the traditional elements of a federal securities fraud case, with the possible addition of an intricate tax question. The damages on the first theory of recovery can be determined all at once, on the basis of evidence common to each member of the class concerning the "value" ITT would have had to add to the exchange offer to compensate the plaintiffs for their risk of federal income tax assessments.[10] The second theory would require more individualized treatment, but one's tax assessment would be easily demonstrable. In fact, damages on that basis might prove to be calculable through a special master arrangement, not dissimilar to the claims review procedure contemplated by the stipulation of settlement. The trial time on both liability and damages, therefore, would be unlikely to exceed one month. Furthermore, discovery has advanced quite far, except with regard to ITT's request for disclosure from the IRS.[11] Thus the judicial energy saved by this settlement does not begin to compare to the herculean task Judge Metzner faced in the *City of Detroit* case.

■ However, the plaintiffs face several major hurdles between their present situation and any ultimate recovery. The defendants' liability is far from clear, despite the IRS action. To establish liability the plaintiffs would have to demonstrate not only that the events surrounding ITT's disposition of the Hartford Fire shares precluded or endangered tax-free treatment for the exchange, but also establish that this information was material, and that ITT

---

9. These two theories of recovery are mirrored by the two recovery options offered in the stipulation of settlement.

10. Plaintiffs' counsel indicated his intention to introduce the testimony of Mr. Martin J. Whitman on this point. Affidavit of Sidney Silver-

man In Support of Settlement and Application For Fees, May 28, 1976, paragraph I.(g).

11. That question is also pending before me and, like the summary judgment motions, has been deferred because of the settlement possibilities.

and the other defendants acted with the requisite state of mind. *See TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757, 44 U.S.L.W. 4852 (1976), and *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668, 44 U.S.L.W. 4451 (1976). ITT has stoutly denied both the taxability of the exchange and the securities law liability; it continues to do so.

Plaintiffs would also be required to establish damages. Their expert witness is prepared to testify that, if the exchange had not been tax free, ITT would have had to sweeten the exchange offer by $5 per share to induce the Hartford Fire shareholders to tender their stock.[12] No evidence has been offered to support a greater recovery, and this figure is consistent with plaintiffs' claims throughout the litigation. ITT's response has been threefold: first, it would simply not have paid any more for the Hartford Fire shares; second, the offer made was already higher than the market price of Hartford Fire at any time in its history; and third, the dividends on the Series N Preferred were to be higher, and safer, than were those on the Hartford Fire common stock.

The amount of damages which can be recovered, therefore, is also not clear-cut. The recovery to the class under the first option in the settlement is 25% of their maximum possible recovery. The second theory depends upon the actual taxability of the exchange, which, as noted above, ITT still contests. Here, however, the class will recover 100% of the maximum possible recovery, because the settlement provides that those who elect that option will be fully reimbursed for any tax liability incurred.[13] In addition, ITT will pay the counsel fees of the plaintiff class.

The final consideration is the reaction of the class members. Fortunately for the court, that part of the fairness equation is clear—the class favors the proposed settlement.[14] The major objections, apart from the issue of counsel fees alluded to earlier, concerned aspects of the tax reimbursement recovery option which, as noted above, have now been resolved to the satisfaction of the objecting class members. Taking into account the risks of litigation as to both liability and damages, in light of the strengths and weaknesses of plaintiffs' case, it is my conclusion that the proposed stipulation of settlement is fair, reasonable and adequate, with respect to the plaintiff class.

■ Fairness to the plaintiff class is not, however, the only criterion by which the proposed stipulation of settlement is to be judged. Because of the clauses providing for the release of ITT's claims against its present and former directors, the interests of ITT and its shareholders must also be considered.[15] The dispute over these releas-

---

**12.** Affidavit of Sidney Silverman In Support of Settlement and Application For Fees, May 28, 1976, paragraph I.(g).

**13.** The proposed stipulation of settlement incorporates ITT's pledge to pay the "net tax liability" incurred by exchanging Hartford Fire shareholders into a judgment, and clarifies some of the terms of that promise.

**14.** This conclusion is based on the court's review of all correspondence submitted in response to the notice to the class, as well as the testimony and legal arguments made at the June 4, 1976 hearing. The court takes this opportunity to commend plaintiffs' counsel on their excellent job of servicing and assisting the members of the class with regard to their claims and questions.

**15.** In this inquiry the court has had the assistance of a number of able counsel, among them some of the most eminent attorneys in the country. The corporation, inside directors, outside directors, and director Felix Rohatyn (and his firm Lazard Freres & Co.) each have separate counsel. The ITT shareholders are represented by the counsel handling the several derivative actions now pending in this and other courts. The presence of separate counsel on behalf of the ITT shareholders is particularly important in light of Judge Friendly's comment in *Alleghany Corp. v. Kirby,* 333 F.2d 327 (2d Cir. 1964), *aff'd by an equally divided court,* 340 F.2d 311 (2d Cir.) (*en banc*), *cert. granted,* 381 U.S. 933, 85 S.Ct. 1772, 14 L.Ed.2d 698 (1965), *cert. dismissed,* 384 U.S. 28, 86 S.Ct. 1250, 16 L.Ed.2d 335 (1966):

"I cannot at all agree with the implication in my brother Moore's opinion that standard

es concerns the effect they might have upon the pending derivative actions. Despite the tempting suggestion that I leave this worry to those courts,[16] I believe I must consider the overall impact of the proposed settlement. I base this conclusion upon Judge Friendly's observation in *Wolf v. Barkes*, 348 F.2d 994, 997–98 (2d Cir.), *cert. denied*, 382 U.S. 941, 86 S.Ct. 395, 15 L.Ed.2d 351 (1965):

> "Of course, the corporation and a defendant have much to gain by having their settlement approved by the court under rule 23(c). After a judicial finding that the settlement is just, following full disclosure and opportunity for stockholders to contest, it will not be easy later to attack the settlement and show that its signers abandoned corporate claims through neglect or self-dealing."

and the decisions in *Stella v. Kaiser*, 218 F.2d 64 (2d Cir. 1954), *rehearing denied*, 221 F.2d 115 (2d Cir.), *cert. denied*, 350 U.S. 835, 76 S.Ct. 71, 100 L.Ed. 745 (1955), and *Masterson v. Pergament*, 203 F.2d 315 (6th Cir.), *cert. denied*, 346 U.S. 832, 74 S.Ct. 33, 98 L.Ed. 355 (1953), terminating shareholder derivative actions.[17]

The derivative plaintiffs, shareholders of ITT, who object to the proposed releases assert claims in their own lawsuits which are offshoots of the transactions underlying this case. However, the causes of action presented in their suits are separate and distinct from those asserted by the plaintiff class in this case. Quite apart from whether ITT's attempt to divest itself of those shares of Hartford Fire which it already owned met the statutory requirements for a tax free exchange is the question whether, in the steps taken, the directors breached fiduciary duties owed to the corporation. The second question is presented in the derivative suits which allege, *inter alia*, that the directors violated their fiduciary duties to the corporation by permitting Lazard to dispose of the Series N Preferred stock (obtained in exchange for the ITT-owned Hartford Fire stock) to its close associates, for an amount far less than its fair value, and to share in the fees paid to Mediobanca for its role in these transactions.

In *Boehm v. Bennett*, Civil No. H76–215 (D.Conn.), the plaintiffs seek to shift the settlement or recovery costs of this case from ITT to its directors, because of their

procedures for the approval of settlements afford sufficient safeguards in the 'big' case, or that they did in this one. The plaintiff stockholders or, more realistically, their attorneys have every incentive to accept a settlement that runs into high six figures or more regardless of how strong the claims for much larger amounts may be. . . . Once a settlement is agreed, the attorneys for the plaintiff stockholders link arms with their former adversaries to defend the joint handiwork. . . ."
333 F.2d at 347.

**16.** As was apparently done in *Delahanty v. Newark Morning Ledger Co.*, 26 F.Supp. 327, 328–29 (D.N.J.1939), where the court stated:

"Much argument has been injected into the issue of dismissal on account of the results of res adjudicata [*sic*] which may accrue in other proceedings pending presently between the parties or which may be in contemplation. This argument projects the issue into the speculative and requires this court to anticipate premises and questions which may or may not arise in the future. If, as and when they do arise the effect of the dismissal here must be viewed by the forum in which the new issues are created."

I cannot take that tack in this case, in part because of the provision in paragraph 20(a) of the stipulation of settlement that this court's judgment provide for the retention of jurisdiction to effectuate the proposed releases. This buck will not be so easily passed.

**17.** Judge Clark's view in *Stella*, not shared by Judges Frank and L. Hand, was that the court's approval of a compromise under Rule 23 bound all members of the derivative class, and that this was how the Michigan settlement was able to terminate the New York lawsuit. 218 F.2d at 67. *See also* Judge Allen's dissent in *Masterson*, lamenting the result that the apparently last-minute pleading amendments were permitted to terminate shareholder derivative actions pending in five other state or federal courts. In both those decisions, of course, the settlement involved the termination of shareholder derivative actions by virtue of the settlement of one identical action between the same parties. Here the effect of the class action settlement on the derivative actions is therefore not as easily predictable. Nevertheless, the risk exists that the releases, if approved by this court, would be held to end the derivative lawsuits. *Cf. Wolf v. Barkes*, quoted above in the text.

asserted breaches of fiduciary duty. *See generally Diamond v. Oreamuno,* 24 N.Y.2d 494, 301 N.Y.S.2d 78, 248 N.E.2d·910 (1969). *Shapiro v. Black,* pending in the New York County State Supreme Court, and *Blecker v. Lazard Freres & Co.,* 73 Civ. 4057 (S.D.N. Y.), raise this same claim. Indeed, the plaintiff in *Shapiro* seeks an injunction preventing ITT from reimbursing the taxes of or paying damages to the *Herbst* class.[18] Furthermore, the derivative lawsuits involve parties not in this case as plaintiffs or defendants. Most importantly, the shareholders of ITT are not parties in *Herbst;* they are a separate class. *See* Rule 23.1, Federal Rules of Civil Procedure. In addition, Mediobanca is a defendant in *Shapiro,* and two European entities, Les Fils Dreyfus Et Cie, S.A. and Lazard Freres Et Cie, are defendants in *Blecker.* Thus, this court presently lacks either personal or subject matter jurisdiction over any of the shareholder derivative actions, with the exception of *Boehm.*

However, the plaintiffs and defendants in *Herbst* have offered several innovative solutions to these jurisdictional problems. The doctrine of ancillary jurisdiction was suggested as a way to bring in the missing parties, but, as the Supreme Court recently noted in *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276, 44 U.S.L.W. 4988 (U.S. June 22, 1976), that doctrine has only been invoked to permit the addition of new parties when the court's jurisdiction is *in rem.* 427 U.S. at 10, 96 S.Ct. at 2418, 44 U.S.L.W. at 4991. We do not have such a situation here. Similarly, the transfer of *Boehm v. Bennett* from the Southern District of New York to this court does not solve the problem of jurisdiction as to the parties or causes of action missing from *Herbst* itself. In an appropriate situation one cause of action may complement another, but this does not coalesce the two into one.[19] Nor does the simple inclusion of the release proposal in the proposed stipulation of settlement do more than present it to this court for its consideration, without in any way giving the court jurisdiction over the parties or causes of action necessary to "effectuate" those releases.[20] The suggestion was also made that this court's issuance of the show cause order to all ITT shareholders somehow brought them before it, for purposes of their derivative claims against the directors of ITT. That argument is also without merit, for mere notice pursuant to Rule 23 or 23.1 cannot confer jurisdiction upon the court where none existed previous to the issuance of the notice. Rule 82, Federal Rules of Civil Procedure. *Cf. Snyder v. Harris,* 394 U.S. 332, 337–38, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969).[21]

18. There are other claims presented in these and other lawsuits based on these transactions which apparently will not be directly released if the stipulation of settlement is approved. In this category apparently fall, for example, the claims against Felix Rohatyn and Lazard Freres & Co. in *Boehm* and *Auerbach v. Brown,* Civil No. 10865/73 (Sup.Ct., Westchester Co.), or against Dreyfus and the other defendants in *Blecker* and *Bernstein v. Mediobanca,* 73 Civ. 3549 (S.D.N.Y.). *Boehm* and *Auerbach* seek to recover, for ITT, the fees received by Lazard from Mediobanca, as Lazard's share of the fee paid by ITT to Mediobanca. *Bernstein* and *Blecker* seek to recover, also for ITT, the profit it lost because the shares of ITT it received in exchange for the Hartford Fire shares it had sold to Mediobanca were resold (pursuant to options) well below the then-prevailing market price. However, as indicated at the hearing, these cases may be terminated by a vote of the newly-immunized (and hence impartial) Board of Directors of ITT, based on their conclusion that it would be unwise for the corporation· to pursue the claims asserted in these cases. This is the problem of the "business judgment" defense to which reference is made in many of the objecting papers filed in this court.

19. No one would contend that the presence of one case on a court's docket permits that court to resolve the claims involved in it as part of a different case, involving different parties and different causes of action, even though both cases arose out of the same transaction. The motions to consolidate *Boehm* with *Herbst,* while they might obviate the jurisdictional problems I perceive, would not resolve the fairness issue I address *infra.*

20. Paragraph 20(a) of the Stipulation of Settlement.

21. In *Cohen v. Young,* 127 F.2d 721 (6th Cir. 1942) the Court of Appeals held that it had jurisdiction because the show cause order issued to shareholders of the corporation on whose behalf the suit was brought made such

Finally, the suggestion was made that the issue presented may simply be viewed as a question of contribution among alleged joint tortfeasors, and that the court surely has jurisdiction to resolve that claim as part of this settlement. There are two possible responses to this point.

■ First, the question of contribution is pending in the derivative actions, not in this one. Although the possibility of filing third party complaints has existed, neither ITT nor any of its directors have chosen to exercise their rights to do so. Rather, the defendants have thus far maintained a united front, opposing the plaintiffs but not quarreling among themselves. Simply stated, the result of their restraint is that there is no "case or controversy" regarding this issue before me in this case. *Wainwright v. Kraftco Corp.,* 53 F.R.D. 78 (N.D.Ga.1971). The issue of contribution is thus not in this case, and this court therefore lacks jurisdiction to approve and effectuate the proposed clauses which purport to resolve that issue through the issuance of releases.

Alternatively, if the contribution issue is properly before me at this stage under federal law, *compare Altman v. Liberty Equities Corp.,* 54 F.R.D. 620 (S.D.N.Y.1972) *and Globus v. Law Research Service, Inc.,* 318 F.Supp. 955 (S.D.N.Y.1970), *aff'd mem.,* 442 F.2d 1346 (2d Cir.), *cert. denied,* 404 U.S.

941, 92 S.Ct. 286, 30 L.Ed.2d 254 (1971) *with Wainwright v. Kraftco Corp.,* 53 F.R.D. 78 (N.D.Ga.1971) *and Reichlin v. Wolfson,* No. 66 Civ. 3111 (S.D.N.Y. June 1, 1972),[22] it is my conclusion that it would not be appropriate to approve the issuance of the proposed releases.

■ Although it was noted in *Percodani v. Riker-Maxson Corp.,* 50 F.R.D. 473 (S.D. N.Y.1970) that:

"the release of noncontributing defendants through a settlement agreement is no reason for disapproving the compromise . . . ." (citing *Glicken v. Bradford,* 35 F.R.D. 144 (S.D.N.Y.1964)).

this statement ignores the fact that the federal-law right to contribution, first recognized in *Globus,* could be eliminated if the releases are approved.[23] Such broad release provisions should be avoided even where there is some contribution from the benefiting defendants, "unless there is no basis for believing that there are any other claims." *Winkelman v. General Motors Corp.,* 48 F.Supp. 490, 496 (S.D.N.Y.1942). Here there is no contribution proposed, and these claims are being pressed in the derivative actions.

Nevertheless, the defendants argue that issuance of the releases is proper, and cite several cases in support of that proposition.

shareholders parties. 127 F.2d at 724. The shareholder/appellant there was a member of the plaintiff class in the derivative action. Of course, the ITT shareholders objecting here are not members of the plaintiff class in *Herbst,* so the show cause order could not make them parties as it did in *Cohen.*

22. This decision was submitted to this court as Exhibit B of the Annex To Brief For Objector Morris Shapiro. There Judge Brieant indicated that, in his view,

"[a]s between the members of the class and the defendants, the liability is joint and several. Plaintiff, if successful, could collect the judgment entirely against the corporation. Nothing prevents the plaintiff class from settling the litigation solely with the corporation.

"The equities between the 'individual wrongdoers' and the corporation, if there are any, arising out of their conduct of the corporate affairs in 1965, are matters to be determined in a plenary shareholders' derivative action

before the Chancery Court of Delaware having jurisdiction over the corporation, or in any other forum having proper jurisdiction and venue. In such action, it may be determined whether the individual defendants or any of them, should contribute in any way to the sums MCS must pay these creditors, and the final order to be entered here will not determine that issue."

23. Objector Morris Shapiro suggests that the releases may extend to Lazard Freres as well, both by the terms of the stipulation of settlement and by virtue of N.Y.Gen. Obligations Law § 15–107 (McKinney 1962). However, paragraph 20(c) does not reach so far, since it only purports to release "partners" of the defendants from the claims of the plaintiff class in *Herbst.* In light of my decision to withhold approval of the settlement as submitted, I need not resolve Shapiro's concern with respect to the applicability or the effect of the New York statute cited above.

In *Kahn v. Kaskel,* 367 F.Supp. 784 (S.D.N.Y.1973), however, the cooperative's release of its sponsor did not purport in any way to eliminate the claims of the class action plaintiffs. Rather, their individual causes of action against the sponsor (if any existed) were explicitly preserved, and the sponsor agreed to indemnify the cooperative as to any claims arising out of the class action. This indemnification agreement, as Judge MacMahon noted, was the equivalent—or better—of any claim over that the cooperative might have against its sponsor. By contrast, the stipulation of settlement in this class action explicitly attempts to extinguish the derivative claims of the ITT shareholders, raised on behalf of their corporation. The court does not need to disagree with defendants' contention that "ITT has the right to settle any claim it may have against its directors"[24] to reject the clauses of the settlement which involve these releases. The issue is not whether ITT can issue the releases, but whether this court should approve their issuance. And it is that which I decline to do.[25]

In *Altman v. Liberty Equities Corp.,* 54 F.R.D. 620 (S.D.N.Y.1972) Judge Tyler refused to approve a settlement proposal which contained an analogous provision—a bar preventing the non-settling defendants from seeking contribution from the settling defendants. Here the proposed releases would prevent the derivative plaintiffs, acting on behalf of the defendant ITT, from seeking contribution from the defendant directors. Here, as in *Altman,* the effect is to undercut strong policies favoring the compromise of litigation. However, I conclude, as did Judge Tyler with respect to the situation he confronted, that it would be unjust to cut off the derivative plaintiffs from seeking to vindicate ITT's claims against the directors who allegedly breached their fiduciary responsibilities to the corporation and its shareholders.[26]

Accordingly, the proposed stipulation of settlement is not approved. However, the court may be willing to reconsider this decision at a later time, if developments in *Boehm v. Bennett* or any of the other derivative suits appear to warrant a resubmission of this or a modified settlement agreement.

It is SO ORDERED.

---

**24.** Memorandum of the defendant-directors of ITT in support of the settlement of *Herbst* and the dismissal of *Boehm,* at 93.

**25.** If the corporation wants to attempt to settle the derivative actions without the approval of their named plaintiffs, *cf. Saylor v. Lindsley,* 456 F.2d 896 (2d Cir. 1972); *Wolf v. Barkes,* 348 F.2d 994, 997 n.4 (2d Cir.), *cert. denied,* 382 U.S. 941, 86 S.Ct. 395, 15 L.Ed.2d 351 (1965); and *Denicke v. Anglo California National Bank,* 141 F.2d 285 (9th Cir.), *cert. denied,* 323 U.S. 739, 65 S.Ct. 44, 89 L.Ed. 592 (1944), the courts in which those actions are presently pending are the proper fora.

**26.** One of the attorneys representing the derivative class, Milton Gould (who represents Boehm in *Boehm v. Bennett*), stated at the June 4, 1976 hearing that he sees no merit in these claims against the ITT directors. His view is shared by plaintiffs' attorney in this case and, not surprisingly, by the attorneys for the various defendants. The court has no reason to doubt the sincerity of their words, or question the energy with which they have investigated these claims.

However, the proper course for the *Boehm* plaintiffs to take is to seek dismissal as against the defendant directors in their own case. Notice may then be issued to all ITT shareholders pursuant to Rule 23.1, and this court may scrutinize that record, and require that objecting class members come forward with evidence to support their claims that the case should not be dismissed as to those defendants. *Compare Papilsky v. Berndt,* 466 F.2d 251, 259–60 (2d Cir. 1972). Those steps are now under way. *Herbst* is simply not the case in which that evaluation should be conducted.