MICHAELS STORES, INC., Plaintiff,

v.

CASTLE RIDGE PLAZA ASSOCIATES and Castle Ridge L.T., Inc., Defendants.

No. Civ. 98–603(MTB).

United States District Court, D. New Jersey.

May 8, 1998.

Martin G. Gilbert, Stryker, Tams & Dill, LLP, Newark, NJ, for plaintiff.

Mark A. Rothberg, Wilf & Silverman, P.C., Short Hills, NJ, for defendant Castle Ridge Plaza Associates.

John C. Maloney, Jr., Pitney, Hardin, Kipp & Szuch, Morristown, NJ, for defendant Castle Ridge L.T., Inc.

Linda G. Harvey, Greenberg, Dauber & Epstein, P.C., Newark, NJ, for applicant for Intervention Rag Shop Wayne, Inc.

## OPINION

CHESLER, United States Magistrate Judge.

## I. INTRODUCTION

This matter comes before the Court on the motion of Rag Shop Wayne, Inc. ("Rag Shop"), for leave to intervene as a Defendant in the above captioned matter pursuant to Fed.R.Civ.P. 24(a)(2) or 24(b)(2). Rag Shop's motion was referred to the undersigned by the Honorable Maryanne Trump Barry, U.S.D.J. No oral argument was heard pursuant to Fed.R.Civ.P. 78. For the reasons set forth below, Rag Shop's motion will be granted.

## II. BACKGROUND

Plaintiff, Michaels Stores, Inc. ("Michaels"), brought this action for declaratory judgment regarding the construction of the terms of a commercial lease. The defendants in the action are Castle Ridge Plaza Associates ("Castle Ridge Plaza") and Castle Ridge L.T., Inc. ("Castle Ridge L.T.").

Michaels is a Delaware corporation with its principal place of business at 8000 Bent Branch Drive, Irving, Texas. Frost Cert. ¶ 1. Michaels owns a chain of retail stores throughout the United States, trading under the name "Michaels." Michaels stores are typical arts and crafts stores. Its sales predominantly consist of frames and framing services, silk florals, crafts and craft supplies, art and art supplies, and seasonal decorations for the home. *Id.* ¶ 12.

On December 18, 1997, Michaels and the Defendant Castle Ridge L.T. entered into a written Asset Purchase Agreement. *Id.* ¶ 5, Ex. 2. Under the Agreement, Michaels agreed to purchase substantially all of Castle Ridge L.T.'s assets and assume substantially all of Castle Ridge L.T.'s liabilities. *Id.* ¶ 6, Ex. 2. The principal asset to be conveyed under the Agreement was the assignment of a certain lease in a shopping center located at the intersection of Route 10 and River Road in East Hanover, New Jersey. *Id.* ¶ 3, Ex. 1.

The lease was originally entered into on September 25, 1991, between Castle Ridge L.T., as tenant, and Castle Ridge Plaza, as landlord (the "Lease"). *Id.* ¶ 3, Ex. 1. It covered a commercial retail store in the shopping center of approximately 115 feet of store frontage by approximately 226 feet, containing approximately 26,000 square feet of ground floor area. *Id.* ¶ 4, Ex. 1. The Lease had an initial term expiring on December 31, 1998, but was subject to three (3) options exercisable by the tenant to renew and extend the term for separate renewal periods of five (5) years each. The Lease therefore has a potential final expiration date of December 31, 2013. *Id.* The original tenant, Castle Ridge L.T., did business at the site under the name "Linens 'n Things," selling linens and other domestic goods. *Id.* ¶ 4.

The transfer of the Lease was embodied in an Assignment and Assumption of Lease Agreement from Castle Ridge L.T. to Michaels. *Id.,* ¶ 7, Ex. 3. Under the terms of the Assignment and Assumption of Lease Agreement, Castle Ridge L.T. assigned and transferred to Michaels "all of its right, title and interest in, to and under that certain Lease dated as of September 25, 1991, between Castle Ridge Plaza Associates, as Landlord, and Assignor, as Tenant, as amended by any amendments, modifications, extensions, or additional agreements relating to or executed in connection with the Lease." *Id.,* ¶ 8, Ex. 3. Michaels, in turn, "assume[d] and agree[d] to indemnify and hold Assignor harmless from and against the obligations of the Tenant under the Lease to be performed by Assignor on and after the date hereof." *Id.*

The portion of the Lease governing assignments was Article XIV, "Assignment and Subletting." It stated in relevant part that

Tenant shall not, either voluntarily or involuntarily, by operation of law or otherwise, assign, transfer mortgage or otherwise encumber this Lease, or sublet the whole or any part of the Demised Premises, or permit the Demised Premises or any part thereof to be occupied by others *except in accordance with this Article XIV.*

Section 14.1(a) (emphasis added); Frost Cert. Ex. 1. one of the exceptions contained in Article XIV was Section 14.1(g). That section states that

Tenant shall have the right, subject to the terms and conditions hereinafter set forth, *without the consent of Landlord,* to assign its interest in this Lease or sublease the Demised Premises ... *to a purchaser of all or substantially all of Tenant's assets (Provided such purchaser shall have also assumed substantially all of Tenant's liabilities).*

(emphasis added). *See* Frost Cert. Ex. 1. Plaintiff argues that this is the case here.

The notice to be given in the event the tenant wished to assign or sublet was set out in Section 14.1(c). That sections states that

If Tenant shall desire to assign this Lease or to sublet the entire Demised Premises for a period of more than the lesser of (1) five (5) years; or (2) the then remaining term of this Lease, or permit any other party to occupy the entire Demised Premises, for purposes other than as a linen store, Tenant shall deliver to Landlord a statement (a "Tenant Statement") notifying Landlord of such desire accompanied by the following information: (I) The name of the proposed assignee, subtenant or occupant; (ii) If a partnership or corporation, the names of the principals of the proposed assignee, subtenant or occupant; (iii) A current financial statement for the proposed assignee, subtenant or occupant, including such financial information as Landlord shall reasonably require; and (iv) A description of the proposed use of the Demised Premises by the proposed assignee, subtenant or occupant.

Section 14.1(c). Frost Cert. Ex. 1.

On December 18, 1997, Castle Ridge L.T. provided the required notice to Castle Ridge Plaza. The notice stated that, in connection with the sale of substantially all of Castle Ridge L.T.'s assets and liabilities, Castle Ridge L.T. was assigning its right, title, and interest in the Lease to Michaels and that Michaels was assuming the tenant's obligations under the Lease. *Id.* ¶ 9, Ex. 4. As part of the notice, Castle Ridge L.T. provided to Castle Ridge Plaza a copy of the Assignment and Assumption of Lease Agreement, Michaels' current financial statements and the names of Michaels' current directors, principal executive officers, and principal shareholders. *Id.* ¶ 10, Ex. 4 & 5. As part of the notice, Castle Ridge L.T. also advised Castle Ridge Plaza that Michaels intended to use the leased premises as an arts and crafts store. *Id.* ¶ 11, Ex. 4.

On January 12, 1998, Michaels received a copy of a notice from counsel for Castle Ridge Plaza, dated January 9, 1998. *Id.* ¶ 12, Ex. 6. In the notice, Castle Ridge Plaza asserted that, because Rag Shop had objected to Michaels' proposed use, Michaels would not be permitted to operate as an arts and crafts store in the leased premises, and that any attempt to do so by Michaels would be considered a violation of the terms of the Lease. Castle Ridge Plaza reserved all of its

rights to prevent any such operation. *Id.* ¶ 13, Ex. 6.

Plaintiff argues that its intended use of the leased premises as an arts and crafts store is not in violation of the terms of the Lease. *Id.* ¶ 14. Section 10.1(a) of the Lease governs the permissible, and impermissible, uses of the premises. It provides that

> Tenant's [sic] shall use the Demised Premises shall be [sic] for the retail sale of linens and other items then sold by the majority of stores in the chain of stores which contain the Demised Premises, and for any other lawful retail use provided that such other retail use does not conflict with or violate the *following restrictions or exclusives* granted to other tenants in the Shopping Center (so long as such tenants remain tenants of the Shopping Center): appliance store, fabric store, drug store, jewelry store, video tape sales and rental store, dry cleaner, hairstylist, greeting card store, lower-end women's clothing store, large-size women's clothing store, bank, pizza restaurant, ceiling fan store and convenience store (such as typical 7–11 Store). In no event, however, may the Demised Premises be used in whole or in part for any of the following: offices (other than as reasonably required in connection with the retail use of the Demised Premises); theater; bar; restaurant, cafeteria; night club; skating rink; massage parlor; 'adult' book store; store selling pornographic materials or devices; game room; funeral parlor; off-track betting establishment; nursery; pool room; or exercise and fitness center.

*Id.* Ex. 1 (emphasis added).

Plaintiff alleges that its intended use is solely as an arts and crafts store, similar to other "Michaels" stores in the chain, and not any of the prohibited uses listed in section 10.1(a) of the Lease. *Id.* ¶ 15. In its motion to intervene, Rag Shop points to its lease with Castle Ridge Plaza, and contends that its lease gives Rag Shop the exclusive right to operate an arts and crafts store at the shopping center.

On January 30, 1998, Plaintiff tendered to Castle Ridge Plaza its check in the amount of $30,714.62, in payment of the February 1998, rent and estimated net expenses, pursuant to the terms of the Lease. *Id.* ¶ 16, Ex. 7. On February 2, 1998, however, Castle Ridge Plaza returned Plaintiff's check and stated that, based upon the prior correspondence from its counsel, it was unable to accept payment of the rent. *Id.* ¶ 17, Ex. 8.

Plaintiff has filed a motion for summary judgment and seeks, as a matter of law, a declaration that its intended use of the leased premises as an arts and crafts store is a permitted use under the Lease. Plaintiff also seeks an injunction prohibiting Castle Ridge Plaza from interfering with Plaintiff's possession of the leased premises, so long as Plaintiff operates an arts and crafts store on the premises, continues to tender the monthly rent and other charges in a timely fashion, and complies with all of the tenant's obligations under the Lease.

Rag Shop seeks to intervene in this matter to protect its position with respect to the landlord as well as to Plaintiff and Castle Ridge L.T. Because Plaintiff seeks, *inter alia*, a declaration that it may use Castle Ridge L.T.'s space to sell arts and crafts and that Castle Ridge Plaza may not terminate its lease with Castle Ridge L.T., Rag Shop believes that it has a direct interest in the outcome of this lawsuit. Accordingly, Rag Shop has filed this instant motion to intervene in this action on April 1, 1998.

## III. DISCUSSION

Rag Shop has filed a motion to intervene as of right or, in the alternative, to permissively intervene in this action. Both Plaintiff and Defendants oppose Rag Shop's motion. Their arguments will be discussed in turn.

### A. Standard

▮ Rule 24 of the Federal Rules of Civil Procedure governs motions to intervene.[1] To intervene as of right, an applicant

---

1. The portion of Rule 24 that deals with interventions as of right states in relevant part that

> [u]pon timely application anyone shall be permitted to intervene in an action ... when a statute of the United States confers an uncon-

must meet four separate requirements. The application must be timely, the applicant must have an interest relating to the subject matter of the action, there must be a practical impairment of the applicant's ability to protect that interest, and the applicant's interest must not be adequately represented by the existing parties. *Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 365–66 (3d Cir. 1995); *Greene v. United States*, 996 F.2d 973, 976 (9th cir.1993), *aff'd*, 64 F.3d 1266 (1995); *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir.), *cert. denied*, 484 U.S. 947, 108 S.Ct. 336, 98 L.Ed.2d 363 (1987); *see also NAACP v. New York*, 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973) (discussing timeliness); *In re Fine Paper Antitrust Litigation*, 695 F.2d 494, 500 (3d Cir.1982) (same). The proposed intervenor bears the burden of demonstrating that he or she is entitled to intervene under Rule 24. *Petrol Stops Northwest v. Continental Oil Co.*, 647 F.2d 1005, 1010 n. 5 (9th Cir.), *cert. denied*, 454 U.S. 1098, 102 S.Ct. 672, 70 L.Ed.2d 639 (1981). If an applicant fails to prove any one of these four factors, intervention as of right is precluded. *County of Orange v. Air California*, 799 F.2d 535, 538 (9th Cir.1986); *cert. denied sub nom City of Irvine v. Orange County*, 480 U.S. 946, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).[2]

## B. Rag Shop's Motion to Intervene

█] Rag Shop has filed this motion to intervene as of right to protect its interests with regards to its lease at Castle Ridge Plaza. Looking to the first factor, timeliness of the motion, there can be no argument that this motion was timely made. First, this case was filed less than three months ago and is now only in its preliminary stages. *Mountain Top*, 72 F.3d at 369; *Harris*, 820 F.2d at 596. Although motions for summary judgment have been filed in this case, they are not returnable until May 26, 1998. Rag Shop will have ample time, albeit only the matter of a week or two, to make submissions to the court with regards to those motions.

Additionally, because the motion was filed when these proceedings were less than two month old, there has been virtually no delay in Rag Shop's application. *Mountain Top*, 72 F.3d at 369; *Harris*, 820 F.2d at 596. Because the motion was filed at such an early stage in the litigation, the original parties to the action cannot have suffered any prejudice as a result. *Mountain Top*, 72 F.3d at 369–70 (holding that a motion to intervene is timely if filed prior to any substantive proceedings having taken place); *Harris*, 820 F.2d at 596.

█ Additionally, Rag Shop also has a sufficient interest in the subject matter of this action. The Supreme Court has stated that an intervenor's interest in the action must be one that is significantly protectable. *Donaldson v. United States*, 400 U.S. 517, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971); *Mountain Top*, 72 F.3d at 366; *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1185 (3d Cir.1994); *Harris*, 820 F.2d at 596; *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir.), *cert. denied sub nom. Morial v. United Gas Pipe Line Co.*, 469 U.S. 1019, 105 S.Ct. 434, 83

ditional right to intervene; or ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
Fed.R.Civ.P. 24(a). Additionally, "[a] person desiring to intervene shall serve a motion ... upon the parties ... [which] state[s] the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought." Fed.R.Civ.P. 24(c).

**2.** In addition to intervention as of right under Rule 24, a court may also exercise its discretion and grant permissive intervention. For the court to consider a permissive intervention, the motion must be timely made, the movant's claim or defense and the main action must have a question of law or fact in common, and the movant must have an independent ground for federal jurisdiction to support permissive intervention. *See* Fed.R.Civ.P. 24(b); *Greene v. United States*, 996 F.2d 973, 978 (9th Cir.1993). If an applicant for intervention is able to meet these three criteria, the court, in its discretion, can decide whether to permit intervention. Permissive intervention is usually allowed by courts when adding the additional party or parties will be the most efficient method of handling the case.

L.Ed.2d 360 (1984). To be significantly protectable, the applicant's interest must be "a legal interest as distinguished from interests of a general and indefinite character." *Id.* "The applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene." *Id.; see also Mountain Top,* 72 F.3d at 366; *Harris,* 820 F.2d at 596.

The subject matter of this action is Plaintiff's attempt to sublease Castle Ridge L.T.'s retail space at the Castle Ridge Plaza. Plaintiff's business would then allegedly be in direct competition with that of Rag Shop's. Rag Shop contends that its 1989 lease has an exclusivity provision which prevents any other arts and crafts store from renting space in the complex. Rag Shop believes that Plaintiff's potential renting of Castle Ridge L.T.'s space will be in violation of this lease provision. Accordingly, Rag Shop has a significant interest in enforcing the exclusivity provisions contained in its lease and ensuring that none of its competitors, like Plaintiff, operates a retail store out of the Castle Ridge Plaza. Rag Shop's interest in its lease is sufficiently definite and protectable to justify intervention in this matter. *See Mountain Top,* 72 F.3d at 367; *United States v. Detroit Int'l Bridge Co.,* 7 F.3d 497, 500 (6th Cir.1993); *see also* Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1908, at 272–74 (1986).

The requirement that Rag Shop's sufficiently definite and protectable interest is likely to be affected by the disposition of this action has also been satisfied. All that is necessary to satisfy this intervention requirement is a showing by the applicant that their interest "might become affected or impaired, as a practical matter, by the disposition of the action in [its] absence." *Mountain Top,* 72 F.3d at 368; *Alcan Aluminum, Inc.,* 25 F.3d at 1185 n. 15. As this Court has previously stated, Rag Shop has a significant interest in its lease and in preventing Plaintiff from opening a store in the shopping plaza. To the extent that the court concludes that Plaintiff has a right to sublet Castle Ridge

L.T.'s retail space in the plaza, Rag Shop's interest will be harmed. Accordingly, Rag Shop's interest may very well be affected by the disposition of this action.

■ Finally, Rag Shop has offered sufficient evidence to show that its interests are not adequately represented by any of the existing parties. To satisfy this requirement, the applicant must show that the representation of its interest "may be" inadequate. *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972); *Mountain Top,* 72 F.3d at 368; *Harris,* 820 F.2d at 596. One factor used in determining whether current representation is adequate "is how the interest of the [applicant] compares with the interest of the present parties." Charles A. Wright & Arthur R. Miller, *supra,* § 1909, at 318–19. "If the interest of the [applicant] is not represented at all, or if all existing parties are adverse to him, then he is not adequately represented." *Id.*

While the position of Defendant Castle Ridge Plaza is not directly adverse to that of Rag Shop's, it is nevertheless clear that it cannot adequately represent the applicant's interest. The impact on Castle Ridge Plaza of a successful outcome by the Plaintiff in this case will not have the same impact on it as it will on Rag Shop. If Castle Ridge Plaza loses to Plaintiff in this action, they will simply have to permit Plaintiff to proceed with its tenancy and then presumably face a law suit from Rag Shop with a potential money judgment. Rag Shop, on the other hand, faces the prospect of having to deal with an undesired competitor and an undesired lawsuit against Castle Ridge Plaza if Plaintiff prevails. Therefore, the interest of Castle Ridge Plaza and Rag Shop are clearly not congruent. Accordingly, the applicant has met its burden of establishing the propriety of an intervention as of right in this case.[3]

## IV. CONCLUSION

For the reasons set forth above, Rag Shop's motion to intervene as of right into

---

**3.** For that reason, it is unnecessary to discuss Rag Shop's alternate argument for permissive intervention.

366

the above captioned action will be granted. An appropriate order will issue.

## ORDER

This matter comes before the Court on the motion of Applicant for Intervention, Rag Shop Wayne, Inc. ("Rag Shop"), for leave to intervene as a Defendant in the above captioned matter pursuant to Fed.R.Civ.P. 24(a)(2) or 24(b)(2). Rag Shop's motion was referred to the undersigned by the Honorable Maryanne Trump Barry, U.S.D.J. No oral argument was heard pursuant to Fed. R.Civ.P. 78; and consistent with this Court's opinion of even date;

IT IS, therefore, on this 7th day of May, 1998, hereby

ORDERED that Rag Shop's motion for leave to intervene as a Defendant in the above captioned matter pursuant to Fed. R.Civ.P. 24(a)(2) be and hereby is GRANTED.