### In re CENDANT CORPORATION SECURITIES LITIGATION.

#### No. CIV. 98–1664(WHW).

United States District Court, D. New Jersey.

Aug. 15, 2000.

value of zero or less, the value is reset to .67    of net book value.

Melvin Brosterman, James Bernard, Strook & Strook & Lavin, LLP, New York, NY, for Daystar Special Situations Fund L.P., Daystar LLC.

Carl Greenberg, Michael Rosenbaum, Budd Larner, Gross Rosenbaum Greenberg & Sade P.C., Short Hills, NJ, Jonathan J. Lerner, Samuel Kadet, Skadden, Arps, Slate Meagher & Flom LLP, New York, NY, for Cendant Corp., Cendant Capital I.

Herbert Jay Stern, Stephen M. Greenberg, Joel M. Silverstein, Stern & Greenberg, Roseland, NJ, James G. Kreissman, Jacob S. Putman, Lauren J. Rosenblum, Simpson Thacher & Bartlett, New York, NY, for Henry R. Silve, Martin L. Edelman.

## OPINION

WALLS, District Judge.

Derivative Action Plaintiff Martin Deutch moves to intervene to object to settlement pursuant to Federal Rule of Civil Procedure 24(a) & (b): (1) as a current shareholder whose interest in Cendant will allegedly be "disproportionately diminished as a result of the Settlement" of the main Cendant class action ("CalPERS Action"); and (2) as the derivative action plaintiff "in order to protect the viability of the Company's and current shareholders' claims that seek recovery from the individual defendants for exposing the company to harm" in the CalPERS

action. DP Intervention Brf. at 1. Plaintiff's motion to intervene under Rule 24(a) is denied but he is allowed to permissively intervene under Rule 24(b). This Opinion also addresses Deutch's substantive objections to settlement.[1]

### A. Rule 24

Rule 24(a) mandates intervention as of right: "when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Derivative plaintiff urges that intervention should be permitted at the Court's discretion under Rule 24(b) if he is not allowed to intervene as of right under Rule 24(a). Permissive intervention is allowed where the "applicant's claim or defense and the main action have a question of law or fact in common."

▮▮▮ To establish a right to intervene under Rule 24(a), four criteria must be satisfied:

1. The application to intervene must be timely;

2. The applicant must demonstrate a "sufficient interest in the litigation;"

3. The interest must be impeded by the disposition of the action; and

4. The prospective intervenor's interest must not be adequately represented by parties to the litigation.

See *Kleissler v. United States Forest Service*, 157 F.3d 964, 969 (3d Cir.1998). There are three criteria under Rule 24(b):

A. The motion must be timely;

B. The main action must have a question of fact or law in common; and

C. The movant must have an independent ground for federal jurisdiction.

See *Michaels Stores, Inc. v. Castle Ridge Plaza Assocs.*, 6 F.Supp.2d 360, 364 n. 2 (D.N.J.1998). The proposed intervenor bears the burden of demonstrating that he or she is entitled to intervene under the rule. *Id.* at 364.

### Analysis

An intervenor as of right, then, must "demonstrate that there is a cognizable threat to a legally cognizable interest." *Id.* at 365. Such interest must be "significantly protectable." *Mountain Top Condominium Assn. v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995). Derivative plaintiff argues that he has both an individual and derivative interest "in preserving the Company's claims against the individual defendants," particularly Cendant's right to contribution from co-defendants for amounts paid in settlement. Brf. at 5–6. Contribution claims have, under other circumstances, been held to be interests protectable through intervention. See *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1184 (3d Cir.1994).

▮ Here plaintiff alleges that the settlement as presented by the parties will impair his individual interest as a current Cendant shareholder and Cendant's interests being prosecuted in the derivative action because, though the HFS Individual Defendants make no "real or meaningful payment" to settlement, they will be considered covered settling parties within the meaning of the Private Securities Litigation Reform Act's ("PSLRA") contribution bar.[2] 15 U.S.C. § 78u–4(f)(7)(A). Plaintiff

---

1. The class action settlement is described and other objections addressed in a companion opinion. *See In re Cendant Corp. Securities Litig.*, No. 98–1664, slip. op. (D.N.J. August 14, 2000)

2. The Court notes that derivative plaintiff's argument that the HFS Individual Defendants

will contribute nothing of value to the settlement was already rejected:

> The Court finds unsupportable plaintiff's repeated contention that the HFS defendants will contribute "nothing" to the settlement. That claim appears to have been made with complete disregard to the structure of the

relies on *Herbst v. International Tel. & Tel. Corp.*, 72 F.R.D. 85, 91–92 (D.Conn. 1976), where the court stated "[b]ecause of the [settlement] clauses providing for the release of ITT's claims against its present and former directors, the interests of ITT and its shareholders [being pursued in a derivative suit] must also be considered." 72 F.R.D. at 91.

Lead Counsel object and initially argue that the interests of current shareholders are insufficient to grant a right to intervene under Rule 24(a). LC Brf. at 3. They cite *Kusner v. First Pennsylvania Corp.*, 74 F.R.D. 606 (E.D.Pa.1977), *aff'd*, 577 F.2d 726 (3d Cir.1978) (Table), where the court found that allowing a current shareholder to intervene in a securities class action settlement merely because the value of the common stock may be diluted would "set a very dangerous precedent" because it would sanction "the intervention of any stockholder in any suit in which the trust or corporation whose stock the stockholder owns is a party." The court continued: "The logical result of this would be that a corporation could not prosecute or settle any suit by or against it without obtaining the approval of every shareholder (and perhaps every holder of a debt instrument as well). Clearly the corporate entity was never intended to be so limited in its ability to make decisions and to act on them." *Id.* (citing *Landy v. Federal Deposit Ins. Corp.*, 486 F.2d 139 (3d Cir.1973); *Swanson v. Traer*, 249 F.2d 854 (7th Cir.1957); and *Levin v. Mississippi River Corp.*, 59 F.R.D. 353 (S.D.N.Y.), *aff'd*, 486 F.2d 1398 (2d Cir.1973)). Lead Counsel further advance the observation of *Gould v. Alleco, Inc.*, 883 F.2d 281 (4th Cir.1989), that:

> settlement, which requires 50% of any recovery by these defendants against E & Y to be paid to the [class].

*In re Cendant Corp. Derivative Action Litig.*, 96 F.Supp.2d 403 (D.N.J.2000).

**3.** Derivative plaintiff states that this "appears to be a matter of first impression." Obj. at 6.

In a sense, every company's stockholders ... have a stake in the outcome of any litigation involving the company, but this alone is insufficient to imbue them with the degree of "interest" required for Rule 24(a) intervention.

*See also In re Sunrise Securities Litig.*, 131 F.R.D. 450, 459 (E.D.Pa.1990) ("as a general rule, only class members have standing to object to a proposed class settlement").

The Court agrees with and adopts the rationale of the above cases. Derivative plaintiff's request to intervene as of right as a current Cendant shareholder is denied.

■ The more interesting issue is whether the extinguishment of contribution claims against settling individual directors by operation of law constitutes a sufficient interest to allow derivative action plaintiff to intervene as of right in the CalPERS action.[3] The Private Securities Litigation Reform Act provides a "settlement discharge" to certain parties through settlement. 15 U.S.C. § 78u–4(f)(7)(A) states: "A covered person who settles any private action at any time before final verdict or judgment shall be discharged from all claims for contribution brought by other persons." *Id.* Upon settlement, the court shall enter an order which bars "all future claims for contribution arising out of the action—(i) by any person against the settling covered person; and (ii) by the settling covered person against any person, other than a person whose liability has been extinguished by the settlement of the settling covered person."[4] § 78u–4(f)(7)(A)(i)–(ii). "Covered persons" include "(i) a defendant in any private action arising under this chapter; or (ii) a defen-

**4.** All parties concede that the HFS Individual Defendants are covered by the contribution bar for Section 10(b) claims and outside HFS defendant-directors for Section 11 claims as well. Disputed is the impact of the bar on the CUC Individual Defendants who arguably are not parties to settlement but whose liability to the plaintiff class is extinguished by the settlement as structured.

dant in any private action arising under section 77k of this title [Section 11] who is an outside director of the issuer of the securities that are the subject of the action." § 78u–4(f)(10)(C)(i)–(ii).

As stated, derivative plaintiff contends that he must intervene to protect Cendant's "legally cognizable right" of contribution post-settlement. Quoting *Alcan*, derivative plaintiff contends, "[t]he act of settling transforms a [defendant's] contribution rights from a contingency to a mature, legally protectable interest." *See* 25 F.3d at 1184; DP Brf. at 5. Lead Counsel, however, distinguish *Alcan*, where the right to sue for post-settlement contribution was expressly granted by federal law yet circumvented by collusion of the settling parties. The court found that under the statute at issue (42 U.S.C. § 9613(f)(1)), early settling parties were expressly given the right to later sue other parties for contribution. *Alcan*, 25 F.3d at 1183. Thus, the act of settlement "imposed a specific liability" for future contribution claims. *Id.* at 1184. Lead Counsel assert "Derivative Plaintiff has no such statutory right. In fact, the PSLRA mandates the very opposite result: the imposition of an order barring all future contribution claims." LC Opp. at 6. The Court agrees with that point of Lead Counsel. Here the "the act of settling transforms . . . contribution rights" into a nullity under law—legally *un*protectable interests. Conversely in *Alcan*, the act of settling created a legally protectable interest held by early settling parties that could be defended through intervention. *See* 42 U.S.C. § 9613(f)(1).

Cendant joins Lead Counsel to further distinguish cases which allowed third party intervention to protect contribution claims. *See, e.g., Alcan*, 25 F.3d at 1184–85; *Herbst v. International Tel. & Tel. Corp.*, 72 F.R.D. 85, 91–92 (D.Conn.

1976). Cendant contends that the Settlement Agreement, rather than affirmatively extinguishing Cendant's rights to contribution, preserves all such claims to the fullest extent of the law. *See* ¶ 10 of (Proposed) Judgment Approving Settlement. Cendant adds that, unlike *Herbst* where, through settlement, directors were provided with releases which would enable them to secure dismissal of a pending derivative action, no party to settlement has agreed to release other settling parties from liability in any other action.[5] This argument has merit. The settling CalPERS parties did not agree to terms in the Settlement Agreement that affirmatively "impair or impede" any derivatively asserted contribution claims; they sought to preserve all claims not extinguished by the PSLRA.

Moreover, Cendant maintains that unlike *Herbst*, where approval of the consent decree as presented would have required dismissal of the derivative action in its entirety, the derivative plaintiff's current derivative action claims are not disturbed by settlement. "In fact, if the proposed settlement is approved, the only derivative claims that Deutch . . . may assert that will be extinguished are those claims against the HFS Individual Defendants that effectively seek contribution and are subject to the PSLRA's contribution bar." CD Brf. at 11. Further, derivative plaintiff's ability to pursue his claim that the corporation wrongly entered into an unfair settlement is not compromised by the settlement—he remains free to pursue this claim in the derivative action. Thus, "as a practical matter," plaintiff's interests in the viability of a derivative action are not "impair[ed] or impede[d]" by the settlement of the CalPERS action. *See* Fed. R.Civ.P. 24(a).

The Court has already accepted this argument. As previously ruled, Deutch is

---

5. Cendant adds that *Herbst* was criticized by the Third Circuit. *See Shlensky v. Dorsey*, 574 F.2d 131, 144 (3d Cir.1978) (holding that a district court is not precluded from approving a settlement which contains releases that may bar continued prosecution of a separate action).

free to pursue a derivative claim against the Cendant board (for breach of fiduciary duty by entering into a settlement harmful to the company), provided he complies with Federal Rule of Civil Procedure 23.1. *See In re Cendant Corp. Derivative Action Litig.*, 96 F.Supp.2d 394, 400–02 (D.N.J. 2000). To date, Deutch has not amended his complaint to pursue any such claim.

In sum, the Court concludes that derivative plaintiff is not entitled to intervene as of right to object to a settlement in order to protect Cendant's alleged "right" to contribution from settling co-defendants where the right does not exist under the law—any such "right" was eliminated by Congress through enactment of the PSLRA. Simply put, derivative plaintiff has no "legally cognizable interest."

Lead Counsel and Cendant also argue that permissive intervention should be denied because (1) the delay caused by intervention "will unduly delay or prejudice the adjudication of the rights of the original parties" and (2) the derivative plaintiff's objections are meritless. LC Brf. at 6.

Derivative plaintiff counters that the Court previously indicated that his concerns were best addressed in the context of an objection to settlement. *See In re Cendant*, 96 F.Supp.2d at 401 n. 7 ("this concern is best raised in a direct challenge to the settlement"). He adds that "the issues involved in Plaintiff's claims (including the Company's contribution claims) are closely related to the class action, and have numerous overlapping questions of law and fact." Intervention Brf. at 10 (citing *Michaels Stores*). The Court recognizes that the two actions shares some common questions, more of fact than law, and also notes that both defendants and the Court earlier urged derivative plaintiff to hold his arguments until the settlement hearing. Accordingly, derivative plaintiff's motion to intervene pursuant to Federal Rule of Civil Procedure 24(b) is granted.[6] The per-

mission to intervene should not be read as an acceptance of the substance of derivative plaintiff's objections, discussed below. Plaintiff is allowed to intervene solely as the derivative action plaintiff, not in his position as a current Cendant shareholder. *See Kusner v. First Pennsylvania Corp.*, 74 F.R.D. 606 (E.D.Pa.1977), *aff'd*, 577 F.2d 726 (3d Cir.1978) (Table). The Court will next examine his objections to settlement.

### B. Objections

Derivative plaintiff objects to the proposed settlement on the following grounds:

- The notice of settlement is defective because it does not inform shareholders that (a) certain derivative claims will be "compromised" and (b) contribution claims by Cendant against at least the HFS Individual Defendants will be barred.

- Approval of the settlement violates due process because it compromises certain derivative claims "even though the interests of the Derivative Plaintiff, the Company, and its current shareholders in those claims are not adequately represented in the class action."

- The settlement fails to allocate Cendant's payment to the class between Section 10(b) claims and Section 11 claims—critical for determining the value of remaining contribution claims if settlement occurs.

- The settlement is "grossly unfair to Cendant ... because it likely eviscerates pending state law derivative claims and contribution claims against individual defendants, without any payment by the individual defendants for the release of those claims."

- The settlement is an illegal indemnification.

---

6. The Court records that the other two requirements for permissive intervention: a timely request and federal subject matter jur-

isdiction, have not been challenged by Cendant or Lead Counsel.

## C. Analysis

■ Lead Counsel [7] first attack derivative plaintiff's premise that the correct standard to be used to evaluate the proposed settlement is "entire fairness." [8] Derivative plaintiff asserts that "[u]nder Delaware law, because the Settlement provides releases from liability for 13 of 14 of the directors who approved the Settlement, the Settlement is an interested director transaction. Thus Delaware law requires the Court to exercise strict judicial scrutiny to determine that the Settlement satisfies the standard of 'entire fairness' to the Company and its current shareholders." DP Obj. at 17–18. Counsel argue that such standard does not apply because "(i) the Third Circuit has clearly set forth a different standard for the Court to utilize in determining the fairness of a proposed settlement; and (ii) applying the appropriate standard, the Court is to consider only the fairness of the Proposed Settlement to the plaintiff class, not Cendant itself." HFS Brf. at 4.

Lead Counsel and others urge the Court to follow Federal Rule of Civil Procedure 23 which requires the Court to determine whether the settlement is fair, reasonable and adequate *to the class.*[9] *See, e.g., In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 148 F.3d 283, 316 (3d Cir.1998), *cert. denied,* 525 U.S. 1114, 119 S.Ct. 890, 142 L.Ed.2d 789 (1999) ("Rule 23(e) imposes on the trial judge the duty of protecting absentees, which is executed by the court's assuring the settlement represents adequate compensation for the release of the

class claims."); *Girsh v. Jepson,* 521 F.2d 153, 156 (3d Cir.1975) (stating that the court is to act as fiduciary for absent class members); *In re Warner Comm. Sec. Litig.,* 618 F.Supp. 735, 753 (S.D.N.Y.1985), *aff'd,* 798 F.2d 35 (2d Cir.1986) ("This Court is concerned solely with the fairness of the settlement to the class.").

In contrast, the entire fairness standard essentially requires the Court to substitute its judgment for the judgment of Cendant's board to determine whether the settlement is in the company's best interest. HFS Brf. at 4. The consensus among those responding to derivative plaintiff's objections is that "any complaint that the Cendant settlement is unfair to the Company and the current shareholders should ... be brought as a derivative action under Delaware Corporate law." LC Reply to DP Obj. at 7–8 n. 5.

The Court agrees. Federal Rule of Civil Procedure 23 requires court scrutiny of settlements to protect absent class members. The standard is whether the settlement is fair, reasonable and adequate to the class. Derivative plaintiff has offered no case where a court abandoned this standard in exchange for an "entire fairness" evaluation in the context of a securities *class action* settlement. Rather, his referenced cases are concerned either with an interested board's decision to terminate a *derivative* action—a decision governed by the law of the state of incorporation, *see Zapata Corp. v. Maldonado,* 430 A.2d 779 (Del.1981)—or a board's reaction to threat

---

**7.** Lead Counsel, the HFS Defendants, the CUC Defendants, and Cendant all filed separate responses to derivative plaintiff's objections.

**8.** Plaintiff moves to introduce expert testimony regarding the "entire fairness standard." This motion is denied for the reasons stated at hearing on June 28, 2000.

**9.** Specifically, factors considered are:

(1) the complexity, expense, and likely duration of the litigation ...; (2) the reaction of the class to the settlement ...; (3) the

stage of the proceedings and the amount of discovery completed ...; (4) the risks of establishing liability ...; (5) the risks of establishing damages ...; (6) the risks of maintaining the class action through the trial ...; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery ...; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975).

of a hostile takeover, *see AC Acquisitions Corp. v. Anderson, Clayton & Co.,* 519 A.2d 103 (Del.Ch.1986).

Moreover, the Court cannot accept derivative plaintiff's related assertion that the "Court must assess whether the Company is paying more than its fair share of the settlement proceeds." Obj. at 20 (quoting Judge Newman's concurrence in *Warner,* 798 F.2d at 37, that "a settlement might well be shown to be unreasonable to a shareholder if the corporate defendant contributed so much more than a fair share. . . ."). The Court, rather, follows the *Warner* ruling: "If the total compensation to class members is fair, reasonable, and adequate, the court is not required to supervise how the defendants apportion liability for that compensation among themselves." 798 F.2d at 37; *see also In re Jiffy Lube Securities Litig.,* 927 F.2d 155, 159 (4th Cir.1991) ("[F]or Rule 23(e) to be satisfied, the court must determine only that sufficient compensation is being paid to the class, without necessarily speculating as to the appropriateness of the contributions of the various settling defendants."); *In re NASDAQ Market–Makers Antitrust Litig.,* 184 F.R.D. 506, 512 (S.D.N.Y.1999) ("The adequacy of settlement does not depend on the allocation of that amount among the Defendants.").

Under the correct standard, the Court now assesses derivative plaintiff's specific objections.

*First, his objection that class notice was insufficient:*

Derivative plaintiff asserts that the notice should have (1) informed shareholders that derivative and contribution claims against the HFS Individual Defendants will be compromised and (2) been sent to Cendant's current shareholders. Brf. at 7–8. The latter argument is first rejected. The Court relies upon its earlier discussion of derivative plaintiff's (in)ability to object to settlement as a current Cendant shareholder and adds that Rule 23(e) mandates that notice shall be given "to all members

*of the class* in such manner as the Court directs."

■■■ With reference to the former argument, derivative plaintiff contends that the PSLRA's contribution bar should have been disclosed in the notice. The Court, however, does not agree that the absence of reference to the statute in the notice renders it "constitutionally infirm." To pass constitutional muster, the notice must inform class members of (1) the nature of the litigation; (2) the settlement's general terms; (3) where complete information can be located; and (4) the time and place of the fairness hearing and that objectors may be heard. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F.Supp. 450, 527 (D.N.J.1997), *aff'd,* 148 F.3d 283, 311 (3d Cir.1998), *cert. denied,* 525 U.S. 1114, 119 S.Ct. 890, 142 L.Ed.2d 789 (1999). The Cendant notice satisfied these requirements. *See* Companion Opinion, 109 F.Supp.2d 235, 254–56 (D.N.J. 2000) (settlement analysis). Additionally, while the PSLRA adds certain disclosure requirements, it does not mandate that Lead Counsel address the function of the contribution bar in the settlement notice.

*Second, his objection that the settlement is constitutionally infirm because valid derivative and contribution claims will be compromised or eviscerated without adequate representation of the Company's and shareholders' interests:*

■■■ This argument is based on derivative plaintiff's repeated assertion that representation of the company's interests is "clearly inadequate, as concretely indicated by the wholly unfair and irrational allocation that results in Cendant paying 100% of the cash amount and the HFS defendants 'contributing' at best an inchoate right in litigation that has only a *de minimis* value." Obj. at 9. This argument fails to present a valid objection. Initially, the case relied upon by plaintiff to support this argument is inapposite to the current situation. *Slottow v. American Cas. Co.,* 10

F.3d 1355, 1358 (9th Cir.1993), addressed the allocation of an already-approved settlement amount in the context of a separate action by a Directors' and Officers' insurer who refused to pay the portion of settlement previously allocated to the individual director-defendant. This ruling was based on *California* law which affirmatively required a finding of relative liabilities of parties to settlement. *Id.* at 1359.

To repeat, the Court here is not required to examine the allocation of payments by defendants to the class when examining a settlement under Rule 23. Further, the PSLRA does not mandate a finding of "proportionate fault" before settlement approval. *See* CUC Letter–Brf. at 2 ("No evidentiary hearing is required by the PSLRA [upon settlement] to determine the proportionate fault of the parties or to determine the extent or application of the bar order.").

This issue was further briefed post-fairness hearing. Derivative plaintiff contests the CUC defendants' assertion that at settlement "it is not necessary for the Court to make findings concerning 'proportionate liability' or which defendants are 'settling covered persons' subject to the bar order." He cites *Jiffy Lube,* 927 F.2d at 161, for the proposition that a court reviewing settlement should delay approval until contribution issues are resolved. He compares Cendant's interests to "those of an *absent* third party whose rights to continued litigation . . . may be prejudiced through the settlement's contribution bar." Brf. at 3 n. 3.

Lead Counsel respond that "the law in this Circuit is patently clear that a proposed class action settlement should [not] be judged according to whether it is fair, reasonable and adequate . . . to a settling defendant." Cendant also responds and asserts that *Jiffy Lube* supports the limited scope of Rule 23 analysis; that court iterated the general rule that fairness to the class governs settlement approval. 927 F.2d at 159 ("[F]or Rule 23 to be satisfied, the court must determine only that sufficient compensation is being paid to the class, without necessarily speculating as to the appropriateness of the contributions of the various settling defendants."). The *Jiffy Lube* court, however, also considered the rights of non-parties to settlement whose contribution right were to be cut off by settlement. The court *permitted* use of a contribution bar but remanded the settlement to the district court to specify the method to be used to reduce any future judgment incurred by a non-settling defendant by the amount received by plaintiffs from settling defendants. *See id.* ("the court's failure to designate a setoff method exposes [nonsettling defendant] to the risk of receiving inadequate credit for the contribution bar imposed on it"). Here, of course, Cendant is a settling defendant that will not have to pay any future judgment.

Moreover, *Jiffy Lube* stands for the proposition already acknowledged by this Court and distinguished from the present settlement—settlements which extinguish contribution rights that would normally survive settlement should be scrutinized. *See United States v. Alcan Aluminum, Inc.,* 25 F.3d 1174, 1184 (3d Cir.1994). To repeat, any inchoate contribution rights are here extinguished by operation of law, not by agreement of the settling parties. Further, the *Jiffy Lube* court allowed the settlement to proceed with a contribution bar and remanded only for more detail as to its judgment-reduction mechanism. Here there is no such open issue: no defendant, settling or non-settling, will remain liable to the plaintiff class. For these reasons, derivative plaintiff's reliance on *Jiffy Lube* is misplaced. The Court stands by its original conclusion that proportionate liability need not be addressed at this time.

Additionally, even if the Court were to analyze the relative contribution of settling defendants, derivative plaintiff's argument that the HFS Individual Defendants' contribution is "illusory" has already been rejected. *See In re Cendant Corp. Deriva-*

*tive Action Litig.*, 96 F.Supp.2d. 403 (D.N.J.2000). The Court repeats that plaintiff's derivative claims against Cendant's board for allegedly overpaying in settlement can be asserted in a derivative action post-settlement.

*Third, plaintiff's objection that before approving settlement the Court must find that it is "entirely fair" to Cendant and reflects the proportionate liability of settling parties:*

■ The first prong of this objection has been rejected because based upon an improper analytic standard of the present settlement. The second aspect of the objection is not supported by law. *See, e.g. Warner*, 798 F.2d at 35–37. Nor is a finding of proportionate liability among settling parties mandated by the PSLRA. Rather, the statute requires allocation of proportionate liability only where liability is found at trial. *E.g.*, § 78u–4(f)(2)(B) ("a covered person against whom a *final judgment* is entered in a private action shall be liable solely for the portion of the judgment that corresponds to the percentage of responsibility of that covered person, as determined under paragraph (3)" (emphasis added)).

*Fourth, his contention that settlement likely eviscerates pending derivative claims:*

■ Sections 78u–4(f)(7)(A)(i)–(ii) of the PSLRA direct that upon settlement, the court shall enter an order which bars "all future claims for contribution arising out of the action." One district court has interpreted "all claims for contribution arising out of the action" to encompass state law claims filed by plaintiffs against a non-settling third-party defendant. *See Lucas v. Hackett Assocs.*, 18 F.Supp.2d 531, 535–36 (E.D.Pa.1998). That court concluded that "because [state law contribution] claims against the [non-settling third-party defendant] arose out of 'the action' in this case, [the PSLRA] applies to any claim [this defendant] may have for contribution." *Id.*

Derivative plaintiff argues that this leads to the conclusion that all derivative action claims against various directors for exposing Cendant to liability in the class action would not survive settlement. The Court does not read *Lucas* so broadly. *Lucas* and other cases cited by derivative plaintiff stand only for the recognition that contribution claims, whether in a state or federal forum, are encompassed by contribution bars in settlement orders. Here, as discussed, certain contribution claims will be barred by operation of the PSLRA.

Independent non-contribution claims against settling defendants, however, are not subject to such a bar. *See TBG, Inc. v. Bendis*, 36 F.3d 916, 928–29 (10th Cir. 1994) (district court abused discretion in entering a contribution bar which precluded claims independent of contribution). This Court does not construe traditional breach-of-duty derivative action claims as contribution claims in disguise. Derivative actions have an established role in business litigation independent of actions under the federal securities statutes, which is to provide a check on directors and officers and require them to act always in the best interests of the corporation.

Accordingly, while contribution claims by Cendant barred by the PSLRA cannot be asserted in any type of action—whether state law or federal derivative claims— plaintiff's core allegations, that Cendant was harmed by the allegedly fraudulent actions of its directors, remain. *Cf. Lucas*, 18 F.Supp.2d at 535 (state law claims masquerading as contribution claims barred by settlement).

This conclusion comports with this Court's earlier conclusion that the derivative action complaint, in its present form, contains no contribution claim. *See In re Cendant Corp. Derivative Action Litig.*, 96 F.Supp.2d 394, 398–99 (D.N.J.2000) ("[T]he Court cannot read into the complaint a cause of action for contribution [under Section 11(f) ].").

*Fifth, the objection that the settlement is an illegal indemnification by Cendant of its directors:*

■ Derivative plaintiff contends that under the reasoning of *Eichenholtz v. Brennan,* 52 F.3d 478 (3d Cir.1995), there is no right to indemnification under the federal securities laws. He asserts that because Cendant is allegedly shouldering the entirety of the settlement amount, it is indemnifying the defendant directors. Momentarily assuming that Cendant is indemnifying its directors, plaintiff's argument nonetheless does not have merit.

*Eichenholtz* considered the validity of a settlement bar order that prohibited non-settling defendants from commencing an indemnification suit against settling defendants. The Third Circuit found that because no express or implied right to indemnification exists under the securities laws, the district court "did not abuse its discretion in barring and extinguishing any causes of action for indemnification." *Id.* at 485. Although *Eichenholtz* permits a court to approve a settlement which contains a bar to indemnification, it does not require the imposition of such a bar as derivative plaintiff appears to argue.

Moreover, courts have ruled that corporate indemnification of individual directors is permitted under the federal securities laws where "defendants did not admit liability in settling the underlying suit." *See Raychem Corp. v. Federal Ins. Co.,* 853 F.Supp. 1170, 1176–77 (N.D.Cal.1994); *see also Commodities Futures Trading Comm'n v. Richards,* No. 96 C 334, 1996 WL 199729, at *4 (N.D. Ill. April 23, 1996) (citing cases where indemnification permitted for settlement payments and defense costs). In general, "[f]ederal cases have upheld a corporation's ability voluntarily to indemnify an officer or director for defense and settlement costs so long as the act of indemnification complies with the general corporate law of the issuer's state of incorporation." Michael L. Charlson, *Proportionate Liability, Contribution, and Indemnification Under the Private Secu-*

*rities Litigation Reform Act,* 28–Fall Brief 43 (1998) (citing *Raychem* ); *see also* 8 Del. C. § 145 (Indemnification of Officers, Directors, Employees and Agents). Here neither group of directors admits liability. And Cendant's bylaws, in accordance with Delaware law, contain an indemnification provision which allows for reimbursement unless there has been an adjudication of intentional wrongdoing. *See* Article IV, Section 11 of the Amended and Restated By–Laws of Cendant Corp.

The Court concludes that plaintiff's reading of *Eichenholtz* is overbroad.

Derivative plaintiff's argument is further defective because the entire settlement payment has not shifted to Cendant; the HFS Defendants have agreed to contribute to the class 50% of any recovery against E & Y.

*Finally, derivative plaintiff's assertion that the alleged indemnification violates the Undertaking in the Registration Statement:*

■ In Item 22 of the statement, if faced with "a claim for indemnification" by a director or officer, Cendant promises "unless in the opinion of its counsel the matter has been settled by controlling precedent, to submit to a court of competent jurisdiction the question of whether such indemnification by it is against public policy."

The HFS Individual Defendants assert that this provision has not been violated. First, "the HFS defendants are contributing to the settlement, not seeking indemnification." HFS Brf. at 30–31. Second, they assert that a claim for indemnification "could not, by definition, arise until such time as there had been a judgment of liability against one of the HFS [or other director] Defendants" and a later demand is made by the director defendant on Cendant to pay the judgment. *See* Reg. Stmt., Ex. 1D at II–1(a) ("In the event that a claim for indemnification" is made, Cendant will submit the question to a court). The court agrees: No claim for indemnifi-

cation has been or will be presented here because no director defendant has been adjudged liable for securities law violations. In fact, all parties deny liability in the settlement.

Moreover, any alleged violation by Cendant of promises made in the Registration Statement is more properly raised as either (1) a derivative claim against directors who caused this supposed violation or (2) a different Section 11 action.

### D. Conclusion

For the reasons stated, the Court finds that none of derivative plaintiff's objections warrants rejection of the proposed settlement. *See* Companion Opinion (addressing substance of settlement and additional objections).

### ORDER

Derivative Action Plaintiff Martin Deutch moves to intervene to object to settlement pursuant to Federal Rule of Civil Procedure 24(a) & (b). For the reasons stated,

It is on this 14th day of August, 2000

ORDERED that plaintiff's motion to intervene under Rule 24(a) is denied but he is allowed to permissively intervene under Rule 24(b); it is further

ORDERED that plaintiff's objections to settlement are rejected; it is further

ORDERED that plaintiff's motion to submit expert testimony is denied for the reasons stated at the fairness hearing on June 28, 2000; it is further

ORDERED that plaintiff's request to submit the affidavit of Merritt Fox is granted; the affidavit was considered by the Court in disposing of plaintiff's objections.