In re STERLING FOSTER &
CO., INC., SECURITIES
LITIGATION.

This Document Relates to Thomas
Rogers, et al., Plaintiffs,

v.

Sterling Foster & Co., Inc.,
et al., Defendants.

Leo W. Smith, et al., Plaintiffs,

v.

Sterling Foster & Co., Inc.,
et al., Defendants.

William V. Wright, et al., Plaintiffs,

v.

Sterling Foster & Co., Inc.,
et al., Defendants.

Michael Reynosa, et al., Plaintiffs,

v.

Sterling Foster & Co., Inc.,
et al., Defendants.

Andrew Petit, et al., Plaintiffs,

v.

Sterling Foster & Co., Inc.,
et al., Defendants.

No. MDL 1208(ADS)(MLO).

Nos. 97 CV 189(ADS)(MLO), 97 CV
610(ADS) (MLO), 97 CV
1689(ADS)(MLO), 97 CV
3253(ADS)(MLO) and 97 CV
3775(ADS)(MLO).

United States District Court,
E.D. New York.

Dec. 11, 2002.

Milberg Weiss Bershad Hynes & Lerach, LLP by Robert A. Wallner, Esq., Kim Levy, Esq., Of Counsel, New York City, for Plaintiffs.

Goodkind Labaton Rudoff & Sucharow, LLP by Lou Gottlieb, Esq., Ira A. Schochet, Esq., Jonathan M. Plasse, Esq., James M. Strauss, Esq., Of Counsel, New York City, for Plaintiffs.

Rathman, Francis & Holland, LLC by Steven J. Stolze, Esq., Of Counsel, St. Louis, MO, for Claims Against Advanced Voice Technologies, Inc., Com/Tech Communications Technologies, Inc. & Embryo Development Corporation.

Kirby McInerney & Squire, LLP by Peter S. Linden, Esq., Lewis S. Sandler, Esq., Of Counsel, New York City, for Claims Against Lasergate Systems, Inc. & ML Direct, Inc.

Law Offices of Joseph D'elia by Joseph D'Elia, Esq., Of Counsel, Huntington, NY, for the Defendant Sterling Foster & Company, Inc.

Ungaretti & Harris by Miriam G. Bahcall, Esq., Rawn Howard Reinhard, Esq., Of Counsel, Chicago, IL, for the Defendant Sterling Foster & Company, Inc.

Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C. by Edward M. Spiro, Esq., Of Counsel, New York City, for the Defendant Randolph Pace.

Alan M. Novich, Montgomery, PA, Defendant Pro Se.

Choate, Hall & Stewart by Jeremiah T. O'Sullivan, Esq., John R. Baraniak, Jr., Esq., Of Counsel, Boston, MA, for the Defendants Com/Tech Communication Technologies, Inc., ML Direct, Inc., and Nancy G. Shalek.

Zuckerman, Spaeder, Goldstein, Taylor & Kolker, LLP by Lisa A. Cahill, Esq., Of Counsel, New York City, for the Defendants Com/Tech Communication Technologies, Inc., ML Direct, Inc., and Nancy G. Shalek.

Bondy & Schloss, LLP by Joel M. Wolosky, Esq., Of Counsel, New York City, for the Defendant Lasergate Systems, Inc.

Arnold & Porter by Peter L. Zimroth, Esq., David A. Weintraub, Esq., Of Counsel, New York City by Stephen M. Sacks, Esq., Scott B. Schreiber, Esq., James L. Cooper, Esq., Of Counsel, Washington, DC, for the Defendants Bear, Stearns & Co., Inc., and Bear, Stearns Securities Corp.

Katten Muchin Zavis Rosenman, New York City by Howard Wilson, Esq., Joseph Zuckerman, Esq., Of Counsel, for the Defendant Richard Harriton.

Carey & Associates, New York City by Michael Q. Carey, Esq., Miriam A. Widmann, Esq., Of Counsel, for the Defendants Roger Buoy, Tony Swash, Terence McAuley, and Armando Araujo.

Covington & Burling, New York City by P. Benjamin Duke, Esq., Of Counsel, for the Defendant Bear, Stearns Securities Corp.

Skadden, Arps, Slate, Meagher & Flom, New York City by Samuel Kadet, Esq., Of Counsel, for Defendant Embryo Development.

Wilmer, Cutler & Pickering, New York City by Richard Bierschbach, Esq., Andrew D. Kaiser, Esq., Of Counsel, for the Defendant Michael Krasnoff.

Milbank, Tweed, Hadley & McCoy, New York City by Scott Edelman, Esq., Of Counsel, for the Defendants Bernstein & Wasserman, LLP., Hartley Bernstein & Steven Wasserman.

Rogers & Wells, New York City by David Meister, Esq., Of Counsel, for the Defendants Bernstein & Wasserman, LLP, Hartley Bernstein & Steven Wasserman.

Goldman & Hafetz, New York City by Susan Necheles, Esq., Of Counsel, for the Defendant Michael Lulkin.

Jeremy Lee Slovik, Boca Raton, FL, Defendant Pro Se.

Adam Lieberman, Defendant Pro Se.

Frank Monroig, Defendant Pro Se.

Timothy J. Matthews, Defendant Pro Se.

Matthew Hawley, Defendant Pro Se.

Jason Marowski, Defendant Pro Se.

Andrew Tursi, Defendant Pro Se.

Craig Kellerman, Defendant Pro Se.

Michael Sabato, Defendant Pro Se.

Robert J. Paulson, Defendant Pro Se.

SPATT, District Judge.

This class action involves allegations by the plaintiffs that the defendants made misstatements and omissions and were engaged in market manipulation with respect to six public offerings. Presently before the Court are motions for final approval of

a partial settlement, plan allocation and the award of attorneys' fees and expenses.

## I. BACKGROUND

The detailed factual background of this dispute is set forth in the Court's decision and order of June 27, 2002, *In re Sterling Foster & Co. Sec. Litig.*, 222 F.Supp.2d 216 (E.D.N.Y.2002). Familiarity with the decision is presumed and it is deemed incorporated in this decision. On July 25, 2001, the lead plaintiffs and defendants Hartley T. Bernstein, Steven F. Wasserman, Bernstein & Wasserman, LLP, Embryo Development Corp. ("Embryo"), and Michael Lulkin (collectively, the "settling defendants") executed a Stipulation and Agreement of Partial Settlement ("Partial Settlement Agreement"). On October 1, 2002, this Court entered an order certifying, for settlement purposes, the action as a class action for persons entities, and their heirs, successors and assigns, who are members of the following subclasses:

(1) *The Advanced Voice Subclass* consisting of all purchasers of Advanced Voice Technologies, Inc. ("Advanced Voice") unites (each unit consisting of one share of common stock and one Class A Redeemable Common Stock Purchase Warrant) during the period February 6, 1995 through October 8, 1996;

(2) *The Com/Tech Subclass* consisting of all purchasers of Com/Tech Communications Technologies, Inc. ("Com/Tech") common stock during the period August 23, 1995 through October 8, 1996;

(3) *The Embryo Subclass* consisting of all purchasers of Embryo Development Corporation common stock during the period November 17, 1995 through October 8, 1996;

(4) *The Applewoods Subclass* consisting of all purchasers of Applewoods, Inc.

("Applewoods") common stock during the period April 10, 1996 through October 8, 1996; and

(5) *The ML Direct Subclass* consisting of all purchasers of ML Direct, Inc. ("ML Direct") units (each unit consisting of two shares of common stock and one warrant) during the period September 3, 1996 through October 8, 1996.

Following the Court's approval, counsel for the plaintiffs ("counsel") mailed 9,576 notices to the class members. Only two class members requested to be excluded from the class, and there was one objection to the Partial Settlement Agreement by a non-settling defendant Michael Krasnoff ("Kransnoff") on the grounds that, (1) class action treatment is not superior to other available methods for the fair and efficient adjudication of the controversy; and (2) the bar order in the Partial Settlement Agreement improperly extinguishes his rights to indemnification, contribution, or other offset.

The Partial Settlement Agreement provides for a total cash settlement of $2,200,000 plus interest which will be paid for (i) the notice and administration costs, (ii) the attorneys' fee and expense award, and (iii) the remaining administration expenses. The remainder will be distributed to the qualified class members. Counsel request an attorneys' fee of 30% which amounts to $660,000 and seek reimbursement of the litigation expenses of $100,000.

## II. CLASS CERTIFICATION

### A. Class Certification

In an order dated October 1, 2002, this Court determined that the plaintiffs have demonstrated that the class meets the requirements under Rule 23. Fed.R.Civ.P. 23(a), (b)(3). Krasnoff objects to class ac-

tion treatment of this action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on the ground that class action treatment is not superior to other available methods for the fair and efficient adjudication of the controversy. Because the Court has already granted class action treatment, it will construe Krasnoff's objection as a motion for reconsideration of the class certification. However, Krasnoff provides absolutely no authority or reasons in support of his objection to class action treatment. Accordingly, Krasnoff's motion to reconsider the Court's October 1, 2002 order is denied.

## B. The Partial Settlement Agreement

Rule 23(e) of the Federal Rules of Civil Procedure requires that any settlement or dismissal of a class action be approved by the court. In determining whether to approve a class action settlement, the district court must determine whether the settlement is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir.2000). Furthermore, the court must "eschew any rubber stamp approval" yet "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir.1974). Judicial discretion should be exercised in light of the general policy favoring settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982).

■ To determine the fairness of a proposed settlement, the Second Circuit has identified nine factors (the "Grinnell factors") that courts should review: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing dam-

ages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

■ In addition, courts should analyze the negotiating process in light of "the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves." *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir.1983) (citations omitted). A strong presumption of fairness attaches to proposed settlements that have been negotiated at arms-length. *See Chatelain v. Prudential–Bache Sec.*, 805 F.Supp. 209, 212 (S.D.N.Y. 1992).

■ The plaintiffs argue that the Grinnell factors weigh in favor of the settlement. In particular, the plaintiffs contends that: (1) the case, which has spanned five years, involves complex legal and factual issues and would require the involvement of expensive experts; (2) although no formal discovery was conducted prior to entering into the settlement agreement, counsel conducted a pre-trial investigation relating to the events and transactions underlying the plaintiffs' claims and were provided with information concerning the settling defendants' insurance coverages and ability to pay any potential judgment; (3) other than Lulkin and Bernstein, the settling defendants have vigorously asserted throughout this action that their statements were truthful and that they acted in good faith when making the statements; (4) the settling defendants' experts who would have been called at trial would vary substantially with

the plaintiff's experts and the trial would therefore be reduced to a "battle of the experts" which would possibly cause a jury to minimize or eliminate the plaintiffs' losses; (5) there is some risk that the settling defendants may successfully defeat the class certification if the litigation is to proceed; (6) the settling defendants' precarious financial situation; (7) the plaintiffs' counsel obtained a settlement amount of $2.2 million through the settling defendants' insurers which could have been denied later by the insurers on the basis that criminal fraud was allegedly involved; (8) the range of the settlement is reasonable given the difficulties and uncertainties of litigating the case; and (9) the settlement is reasonable in light of the risks and uncertainties of litigation in this matter.

With respect to the reaction by the class to the settlement, the only objection to the settlement was made by Krasnoff, a non-settling defendant. Krasnoff argues that the Partial Settlement Agreement improperly extinguishes his rights to indemnification, contribution, or other offset. Krasnoff asserts that if he is held liable on any of the claims against him, he will seek contribution and/or indemnification from the settling defendants. Therefore, Krasnoff claims that, if approved, the proposed settlement agreement harms him because he will be barred from seeking such contribution.

Courts have upheld orders barring non-settling defendants' claims against settling defendants for indemnity, breach of fiduciary duty, fraud and negligence. *See Eichenholtz v. Brennan*, 52 F.3d 478, 484–85 (3d Cir.1995); *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1232 (9th Cir.1989); *In re Rite Aid Corp. Sec. Litig.*, 146 F.Supp.2d 706, 727–29 (E.D.Pa.2001); *In re Cendant Corp. Sec. Litig.*, 109 F.Supp.2d 273, 284 (D.N.J.2000). *Lucas v. Hackett Assocs.,*

*Inc.*, 18 F.Supp.2d 531, 533–36 (E.D.Pa. 1998).

However, as both the plaintiffs and Krasnoff point out, the Private Securities Litigation Reform Act ("PSLRA") provides that insofar as plaintiffs in a securities fraud case settle with a "covered person," the final judgment against non-settling defendants will be reduced either by "an amount that corresponds to the percentage of responsibility of that covered person; or . . . the amount paid to the plaintiff by that covered person," whichever is greater. 15 U.S.C. § 78u–4(f)(7). Here, because at least one of the claims against each of the defendants are based on § 10b of the Securities and Exchange Act, the defendants are all "covered persons." 15 U.S.C. § 78u–4(f)(7)(i). Thus, any judgment obtained against Krasnoff for any of the securities claims asserted in the complaint will be reduced by the (1) the settling defendants' percentage of responsibility, or (2) the amount the settling defendants actually paid, whichever is greater.

Similarly, to the extent that Krasnoff claims any rights to contribution or indemnification against any of the settling defendants based on state law, McKinney's General Obligations Law § 15–108 provides that a judgment against Krasnoff shall be reduced (1) by the amount paid in settlement by the settling defendants against whom he has a claim, or (2) by the settling defendant's percentage of responsibility, whichever is greater. *See In re Joint Southern and Eastern District Asbestos Litig.*, 760 F.Supp. 33, 34 (E.D.N.Y.1991).

The Proposed Partial Settlement extinguishes all contribution rights of settling defendants against any non-settling defendants and provides:

**The Court hereby permanently bars and enjoins any other person or entity who is or may be liable to Plaintiffs**

and/or the Class (or any person or entity other than any of the Released Parties) and the successors and assigns of any of them from asserting any action or claim against any of the Settling Defendants or Released Parties for contribution or similar relief (including any and all claims, rights, causes of action, suits, demands, liabilities, damages, losses, fees, costs, or expenses of any kind whatsoever, whether based on federal, state, local statutory or common law or any other law, rule or regulation, including both known and unknown claims, that have been or could have been asserted in any forum against the Released Parties which arise out of or relate in any way to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, referred to or that could have been arrested in the Complain or any other pleadings filed in the Action or any related action relating to the purchase of the securities of any of the Issuer Defendants during the respective time periods for each Subclass, or any claim for contribution or equitable indemnity, by which such person or entity attempts to recover losses arising out of claims made by Plaintiffs on behalf of themselves or any member of the Class.)

Under the PSLRA, a bar order against future contribution or similar offsets must be accompanied by "equitable standards" for non-settling defendants in the form of a proportionate reduction in the ultimate judgment. *Lucas*, 18 F.Supp.2d at 535; *see In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 492 (11th Cir.1992); *Neuberger v. Shapiro*, 110 F.Supp.2d 373, 382 (E.D.Pa. 2000). At the settlement hearing held on December 10, 2002, the plaintiffs stated that they would draft an amendment to the proposed settlement agreement providing for a judgment reduction for the non-settling defendants. On December 11, 2002, the Court received the amendment with the new language with regard to the judgment reduction. The proposed settlement agreement now states that "[p]ursuant to 15 U.S.C. § 78u–4(f)(7)(B), if there is a final verdict or judgment against any Non Settling Defendant in this action, the verdict or judgment shall be reduced by the greater of: (a) an amount that corresponds to the percentage of responsibility of the Settling Defendants; or (b) the amount paid to the plaintiff by the Setting defendants." As such, because the plaintiffs have amended the proposed settlement agreement, the Court finds that the terms and conditions of the proposed settlement agreement are "fair, adequate, and reasonable" and the Partial Settlement Agreement is approved. Accordingly, the Court directs that judgment be entered dismissing the complaints against the settling defendants on the merits with prejudice, subject to the terms of the settlement.

## C. Approval of the Plan Allocation

The adequacy of an allocation plan turns on whether the proposed allocation is fair and reasonable. *In re Painewebber Ltd. P'ship Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y.1997). The allocation plan is set forth in the Partial Settlement Agreement. The plan requires any member of the class to submit a valid proof of claim before she or he is entitled to receive any proceeds from the Net Settlement Fund. The plaintiffs' co-lead counsel is responsible for supervising the administration of the settlement. Because the allocation plan appears fair and reasonable, the Court approves the allocation plan.

## D. Attorneys' Fees and Reimbursement of Litigation Expenses

Counsel request a fee of 30% of the $2,200,000 settlement. This amounts to a

total sum of $660,000. However, the proposed settlement agreement provides that defendant Embryo is not required to make a $75,000 payment until June 26, 2003. Counsel will not seek a fee based on the payment of that $75,000 by Embryo until it is actually paid. Therefore, at this time, counsel only seek a fee of $637,500.

■ The Second Circuit has stated that attorneys who create a "common fund" are entitled to "a reasonable fee—set by the court—to be taken from the fund." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir.2000). The determination of "reasonableness" is within the discretion of the district court. *Id.* There are two methods by which the district court may calculate reasonable attorneys' fees in class action cases, the lodestar method and the percentage method. *See Goldberger*, 209 F.3d at 50 (holding that both the lodestar and the percentage of the fund methods are permitted).

Under the lodestar method, the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed and then multiplies that figure by an appropriate hourly rate. Once that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on "other less objective factors" such as the risk of the litigation and the performance of the attorneys and the result accomplished. Under the percentage method, the court sets a certain percentage of the recovery as the fee. In determining what percentage to award, courts have looked to the same "less objective" factors that are used to determine the multiplier for the lodestar.

"Although the law in the Circuit has not been uniform, the trend of the district courts in this Circuit is to use the percentage of the fund approach to calculate attorneys' fees." *In re American Bank Note*, 127 F.Supp.2d 418, 431 (S.D.N.Y.2001). Courts favor the percentage of the fund method because lodestar "created an unanticipated disincentive to early settlements," tempted lawyers to run up their hours, and "compell[ed] district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger*, 209 F.3d at 48–49; *see In re American Bank Note*, 127 F.Supp.2d at 431–32. The Second Circuit recommends analyzing the documentation of the hours submitted by counsel as a "cross check" on the reasonableness of the requested percentage. *Goldberger*, 209 F.3d at 50.

In *Goldberger*, the Second Circuit affirmed an attorneys' fee award of 4% of the common fund and criticized courts who have used 25% (less than the 30% requested here) as a benchmark for attorneys' fees because that percentage presumes "a substantial contingency risk in every common fund case." *Goldberger*, 209 F.3d at 52. "Anecdotal evidence tends to confirm" the conclusion of an empirical study that "there appears to be no appreciable risk for non-recovery" in securities class actions. *Id.* at 57 ("[O]our nagging suspicion is that attorneys in these cases are routinely overcompensated for such things as contingency risk.").

■ Under the lodestar or the percentage method, courts should pay attention to the following factors: (1) the time expended and expertise of counsel, (2) the magnitude and complexities of the litigation, (3) the risks involved in the litigation, (4) the quality of the representation, (5) the requested fee in relation to the settlement, and (6) public policy considerations. *See id.* at 50. Moreover, the Second Circuit has stated that courts should consider the "overarching concern for moderation," *id.* at 53, and directed that courts set the attorneys' fees percentage largely according to the actual contingency risk. *See id.* at 54 ("We have historically labeled the

risk of success as 'perhaps the foremost factor' to be considered in determining whether to award an enhancement.'").

### 1. The Risks involved in the Litigation

■ Counsel argue that the contingency risk was significant, especially given the settling defendants' precarious financial condition. In addition, counsel assert that the significant outlay of cash and personnel resources by counsel have been completely at risk and payment for their services was wholly dependent on obtaining some recovery for the class. However, this latter argument does not go to the merits of the particular case but rather applies equally to virtually every contingency fee case.

Furthermore, in light of prior government investigation and criminal prosecutions and given that approximately twenty-one defendants have been sentenced or are to be sentenced in relation to the Sterling Foster "boiler room" operation, *see, e.g., United States v. Kearney,* 2002 WL 31426030, 2002 U.S. Dist. LEXIS 20745 (S.D.N.Y. Oct. 23, 2002); *United States v. Turney,* 2002 WL 31426227, 2002 U.S. Dist. LEXIS 20746 (S.D.N.Y. Oct. 23, 2002); *United States v. Abish,* 2002 WL 31426009, 2002 U.S. Dist. LEXIS 20747 (S.D.N.Y. Oct. 23, 2002), the Court fails to see how the contingency risk was significant in terms of establishing liability. Accordingly, the most important factor in our analysis which is the contingency risk involved in the litigation weighs against awarding a more substantial fee in this matter.

### 2. The Time Expended and Expertise Required by Counsel

Counsel submit that collectively the approximately 14 law firms involved in this litigation for the plaintiffs devoted over 5,000 hours to the prosecution of this matter. Counsel represent that these hours establish a lodestar of more than $1,600,000. The 30% requested by counsel constitutes a total of $660,000 of the settlement fund, less than half their lodestar, or a negative multiplier. Thus, without the negative multiplier, their lodestar amount would swallow up a significant amount of the settlement fund.

It should be noted that no formal discovery has been conducted, and the settlement was achieved without requiring deposition discovery—the major attorney time user. Significantly, the Court finds that counsel did not invest a substantial amount of time and resources in the major litigation stages, namely depositions, trial or appeal.

### 3. The Magnitude and Complexities of the Litigation

In the memorandum in support of counsel's petition for fees and reimbursements of expenses, counsel assert in a somewhat conclusory fashion that "taking into account the significant complexity, the magnitude of the class action, and the risks of the litigation and the contingent nature of the fee, the amount that [they seek] is certainly reasonable." The Court agrees that this was a highly complex case that involved an elaborate "boiler room" operation by the defendants.

### 4. The Quality of Representation

Counsel argue that the quality of their representation is best evidenced by the solid recovery obtained for the class because despite the settling defendants' questionable ability to pay, counsel obtained a $2,200,000 settlement. Furthermore, in a compendium of counsel's affidavits in support of an award of fees, counsel represent that they are experienced and skilled in the field of class action litigation and have provided each firms' resume and achievements. The Court agrees that

there was great quality in their representation.

### 5. The Requested Fee in Relation to the Settlement

Counsel seek to recover a total amount of $660,000 from a settlement figure of $2.2 million. This amount is significantly less than the actual amount that counsel would have billed on this case.

### 6. Public Policy Considerations

Although Counsel simply state that the reasonableness of the requested fee is supported by public policy, they advance no public policy considerations to justify their request of a 30% fee.

Applying the "principles of moderation" urged by the Second Circuit in *Goldberger,* the Court awards a percentage of 25% of the recovery, namely the sum of $550,000. It is true that counsel undertook a risk in taking this case due to the defendants' inability to pay. However, the 25% contingent fee is a fair and reasonable fee and follows the emerging trend within the Second Circuit of awarding attorneys considerably less than 30% of the common funds in securities class actions, even where there is considerable contingency risk. *See Goldberger,* at 54 (lodestar award equal to 4% of the common fund); *Varljen v. H.J. Meyers & Co.,* 2000 WL 1683656, at *5 (S.D.N.Y.2000) (awarding 20%); *In re Fine Host Corp.,* 2000 WL 33116538, at *5 (D.Conn.2000) (17.5%); *In re: American Bank Note Holographics, Inc.,* 127 F.Supp.2d 418 (S.D.N.Y.2001) (rejecting a 30% claim and awarding 25%).

Here, the Court is mindful that the government prosecuted several of the defendants and that approximately twenty-one defendants have already been sentenced or are to be sentenced. As such, because the plaintiffs would have likely proven their claims against the defendants, the Court determines that counsel did not take a "tremendous risk" that payment for their services would be totally unrecoverable. *See Steiner v. Williams,* 2001 WL 604035, at *7 (S.D.N.Y.2001) (awarding 30% because plaintiffs' argument was "novel and risky" and because "counsel took a tremendous risk that, in the end, nothing would be recovered").

### 7. The Lodestar "cross-check"

The Lodestar analysis, which the Second Circuit encouraged as a "cross-check" on the reasonableness of the requested percentage, 209 F.3d at 50, confirms the appropriateness of a 25% award in this case. As noted above, the emerging trend in this Circuit generally is to award attorneys considerably less than 30% of common funds in securities class actions. *See Goldberger,* 209 F.3d at 53. The Court is not persuaded by counsel's argument that because payment for their services was wholly dependent on obtaining some recovery for the class, the contingency risk was "significant." Given the high percentage of securities class actions which do settle, "it is inappropriate to attribute routinely substantial risk to these types of securities class actions simply as the 'nature of the beast.'" *Baffa v. Donaldson Lufkin & Jenrette Securities Corp.,* 2002 WL 1315603, at *2 (S.D.N.Y. June 14, 2002) (citing *In re Dreyfus Aggressive Growth Mut. Fund Litig,* 2001 WL 709262, at *1 (S.D.N.Y. June 22, 2001)).

Furthermore, while $660,000 represents a mere 41% of the lodestar, the Court notes that counsel's lodestar calculation is based on attorney fees for partners ranging from $635 to $300 per hour. Even more remarkably, certain associates billed at $425 and $405 per hour, and certain paralegals billed at $175 and $165 per hour. *See Savino v. Computer Credit, Inc.,* 164 F.3d 81, 87 (2d Cir.1998) (uphold-

ing court hourly rates of $200 for partners, $135 for associates and $50 for paralegals).

Nevertheless, counsel are entitled to reasonable fees reflecting their time and effort expended in this case. In addition, "the fact that any reasonable fee would necessarily represent a negative multiplier of the lodestar supports an award at the higher end of the spectrum." *Id.* at *2. Accordingly, the Court awards to counsel 25% of the recovery, the total sum of $550,000. However, because counsel will not seek a fee based on Embryo's payment of $75,000 until June 26, 2003, the Court awards counsel an amount of $531,250 at this juncture, in addition to an amount of $18,750 after Embryo makes its final payment.

### E. Reimbursement of Litigation Expenses

Counsel are entitled to reimbursement for reasonable litigation expenses. *See Miltland Raleigh–Durham v. Myers,* 840 F.Supp. 235, 239 (S.D.N.Y.1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those client."). Although the actual amount of litigation expenses was $147,439.50, Counsel request a reduced amount of $100,000 for such expenses. Given the length of this litigation, most of the litigation expenses appear reasonable. Accordingly, the Court awards counsel $100,000, the full amount requested, as reasonable litigation expenses in this matter.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that Krasnoff's motion for reconsideration of the Court's October 1, 2002 order granting class action treatment is **DENIED;** and it is further

**ORDERED,** that the parties are to take such action as is consistent with the October 1, 2002 order; and it is; and it is further

**ORDERED,** that the Partial Settlement Agreement is approved; and it is further

**ORDERED,** that judgment be entered dismissing the complaint against the settling defendants on the merits and with prejudice subject to the terms of the Partial Settlement Agreement; and it is further

**ORDERED,** that the allocation plan is approved; and it is further

**ORDERED,** that counsel for the plaintiffs be awarded attorneys' fees of 25% of the settlement; and it is further

**ORDERED,** that counsel for the plaintiffs are to be awarded attorneys' fees in the sum of $531,250 at this juncture; and it is further

**ORDERED,** that after Embryo's final payment of $75,000 is made on or before June 26, 2003, counsel for the plaintiffs are to be awarded an additional sum of $18,750 for attorneys' fees based on such payment; and it is further

**ORDERED,** that counsel for the plaintiffs be awarded litigation expenses of an amount of $100,000; and it is further

**ORDERED,** that counsel for the plaintiffs are directed to file a complete amended caption with the Court within 10 days of this decision.

**SO ORDERED.**